| | |
|---|---|
| 1 | JENNIFER HOLLIDAY, ESQ. (SBN 261343) |
| 2 | 1901 Avenue of the Stars, 2nd Floor |
| 3 | Los Angeles, California 90067 |
| 4 | jhollidayesq@protonmail.com |
| 5 | (805) 622-0225 |

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENEVIEVE MORTON, an individual,<br><br>            Plaintiff<br><br>   v.<br><br>TWITTER, INC., a Delaware Corporation; TWITTER INTERNATIONAL COMPANY; TWEETDECK, INC., a Delaware Corporation; MAGIC PONY TECHNOLOGY, INC., a Delaware Corporation; Does 1-10,<br><br>            Defendants. | **COMPLAINT FOR:**<br><br>1. **COPYRIGHT INFRINGEMENT, 17 U.S.C. § 106**<br><br>2. **RIGHT OF PUBLICITY, CAL. CIV. CODE § 3344**<br><br>3. **FALSE LIGHT**<br><br>**DEMAND FOR JURY TRIAL** |

PLAINTIFF GENEVIEVE MORTON ("Morton" or "Plaintiff"), by and through her attorney of record, Jennifer Holliday, alleges against Twitter, Inc. ("Twitter"), Twitter International Company ("Twitter International"), TweetDeck, Inc., Magic Pony Technology, Inc., and Doe Defendants 1-10 (collectively, "Defendants") upon personal information as to Plaintiff's own activities, and upon information and belief as to the activities of others, as follows:

## I.  Jurisdiction and Venue

1. This Court has exclusive subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this is a claim for copyright infringement arising under the Copyright Act for the United States, 17 U.S.C. § 101, et. seq., and the Court has jurisdiction over the remaining causes of action under 28 U.S.C. §1367.

2. This Court has personal jurisdiction over Defendants Twitter, Inc., Twitter International, TweetDeck, Inc., Magic Pony Technology, Inc., and Doe Defendants Numbers 1 through 10 because these Defendants conduct substantial business in the State of California and can be found in this judicial district.

3. The claims alleged in this Complaint arise in the State of California and the Central District of California.

4. Venue is appropriate in this judicial district pursuant to 28 U.S. Code Section 1391(b)(3) and this Court has jurisdiction over Defendants, and each of them, by reason of the fact that among other things: (1) the Defendants Twitter, Inc. and Twitter International operate Twitter.com, an interactive website accessible in the County of Los Angeles; (2) the Defendants' businesses are accessible in the County of Los Angeles; (3) Defendants are personally subject to jurisdiction of this Court pursuant to the California Long-Arm statute, California Code of Civil Procedure Section 413.10 and Federal Rule of Civil Procedure 4(e).

## II.  Parties

5. Plaintiff is an individual, a citizen of South Africa, a Permanent Resident of the United States currently residing in Tennessee.

6. Upon information and belief, Defendant Twitter, Inc. is a Delaware Corporation registered number 4337446, with its headquarters and principal business address at 1355 Market Street, Suite 900, San Francisco, CA 94103. Twitter, Inc. is also registered with the Secretary of State of California with file

number C3006676 and lists a registered agent for service of process of "CT Corporation System" in Los Angeles County at 330 N. Brand Blvd., Glendale, California 91203.  On information and belief, Twitter, Inc. owns and operates Twitter.com, Twitter for iPad, Twitter for iPhone, Twitter for Android, and Twitter for Mac, as well as Defendants TweetDeck, Inc., Magic Pony Technology, Inc. (collectively "Subsidiary Defendants").  At all relevant times, Defendant Twitter, Inc. offered users access to Twitter.com in the United States pursuant to its Terms of Service available at https://twitter.com/en/tos/previous/version_15 hereby incorporated by reference.  Plaintiff is informed and believes all Subsidiary Defendants were acting as agents of Twitter, Inc. at all relevant times and had the authority to act on behalf of Twitter, Inc. and that Twitter, Inc. is responsible for the acts of Subsidiary Defendants.

7. Defendant Twitter International Company is a company registered in Ireland.  At all relevant times, Twitter International Company offered users access to Twitter.com to users in the E.U., EFTA States or the United Kingdom pursuant its Terms of Service also available at https://twitter.com/en/tos/previous/version_15.  Plaintiff is informed and believes Twitter International Company is responsible for enforcing Terms of Service against users of Twitter.com outside the United States.

8. Defendant TweetDeck, Inc. "TweetDeck" is a Corporation organized under the laws of the State of Delaware registered under File Number 4643066 and owns TweetDeck, a social media dashboard application for management of multiple Twitter accounts and an alternative to using Twitter.com.  Instructions on how to use TweetDeck appear on Twitter.com, and TweetDeck "lets you delegate access to your team members without the need to share passwords."  TweetDeck is an application integrated with Twitter that enables entire teams of people to "share access" to an account.[1]  Using the TweetDeck interface, a Twitter account can be

---

[1] See Twitter.com, Help Center, App and website integrations, How to use the Teams feature on TweetDeck, available at: https://help.twitter.com/en/using-twitter/tweetdeck-teams (last accessed Aug. 17, 2021).

shared by multiple people on multiple IP addresses in multiple locations worldwide, and an account can be operated by up to 200 members of a team.

9. Defendant Magic Pony Technology, Inc. is a corporation organized under the laws of the State of Delaware with corporate file number 5986226. Magic Pony Technology, Inc. develops artificial intelligence learning technologies that use neural networks and machine learning to alter photography-based image data. Magic Pony Technology, Inc. is a subsidiary of Defendant Twitter, Inc. who acquired it for approximately $150,000,000 in 2016.

10. Doe Number 1 is an agent of Twitter, Inc. who manages Twitter's DMCA Notice and Takedown Requests.  Although Doe Number 1 is unknown to Plaintiff, the party's identity is known to Twitter, Inc., and it had the apparent authority to act on behalf of, and acted on behalf of, Twitter, Inc. and its subsidiaries at all relevant times.

11. Doe Defendant Number 2 is unknown to Plaintiff but whose identity is likely to be discovered through the course of this litigation.  Doe Defendant Number Two operates the Twitter.com account under username @city_tits and the linked website operating at IP Address 172.64.34.200, a server located within the United States. Twitter and/or Twitter International offered its Services to Doe Defendant Number 2 through its Terms of Service and/or Developer Policy available here: https://developer.twitter.com/en/developer-terms/policy and incorporated by reference.  At all relevant times, Twitter, Inc. and/or its subsidiary Twitter International Company had the right to terminate services to the account holder operating the @city_tits account.

12. Plaintiff does not know the true names of defendants named in this Complaint as Does 3-10 and therefore sues those defendants by such fictitious names.  Plaintiff will amend the Complaint to include the true names of the Doe Defendants and allege facts supporting their liability when Plaintiff learns them. Plaintiff is informed and believes, and on that basis alleges, that each of the

fictitiously named defendants is responsible in some manner for the acts and omissions that give rise to Plaintiff's injuries, and that the Doe Defendants proximately caused Plaintiff's injuries.

### III. Facts

A. <u>Morton created photographs and registered them with the U.S. Copyright Office</u>

13. Morton created and owns all rights to two photographs, one registered with Copyright Registration Number VA-2-211-724 and entitled "Love on the Rocks 15" ("Infringed Image 1"), and another with Copyright Registration Number VA0002210005 and entitled, "Artists Collection 16" ("Infringed Image 2") (collectively "Infringed Images").

14. Morton is an internationally-recognizable model whose name and likeness have substantial value, and Morton's business partially involves creating, commissioning and selling and/or licensing copyrighted collections of copyrighted photographs.

15. Ms. Morton has maintained a Verified Account on Twitter.com since 2009 under the username @genevievemorton and, at all relevant times, had a following of over 83,000 users on Twitter.com and over 3.5 million followers across other social media platforms. Ms. Morton's name, image and likeness ("the Morton Publicity Rights") has and, at all relevant times had, substantial commercial value.

B. <u>Twitter, Inc.'s business model and platform.</u>

16. Twitter, Inc. operates an Internet-based service that, among other things, allows its users to send messages ("Tweets") through Twitter.com and its mobile site, client applications, or third-party applications ("Twitter"). Twitter enabled its user @city_tits to embed photos and videos into Tweets displayed to the public as well as in direct messages transmitted outside of public view.

17. Twitter, Inc. also offers users access to data storage, developer services, and a CDN ("Content Delivery Network") consisting of data centers in various

5

1  locations that facilitate rapid data transfer worldwide. Plaintiff is informed and
2  believes that over 800,000 websites use Twitter, Inc.'s CDN, including companies
3  like Walmart and the Professional Golf Association (PGA), and the CDN is a
4  source of revenue for Twitter, Inc.
5      18. Twitter, Inc. grossed in excess of $3.5 billion in 2020 from selling
6  advertising on Twitter.com and other revenue streams, is traded on the New York
7  Stock Exchange, and has a market valuation exceeding $56,000,000,000.
8      19. At the time of the alleged infringement, Twitter.com had approximately
9  180,000,000 unique daily users and 330,000,000 registered users, and that number
10 has subsequently increased in 2020.
11     C. <u>Twitter and its users copied, displayed, and distributed the Infringed Images,</u>
12        <u>and created derivative works without license or permission from Morton.</u>
13     20. On or about June 18, 2020, a copy of Plaintiff's Infringed Image 1 appeared
14 without Morton's authorization on the @city_tits Twitter feed at the URL
15 https://twitter.com/city_tits/status/1273260487506120709 with the following text:
16 "Genevieve Morton @genevievemorton #Girlswithbigtits #genevievemorton" and a
17 link to a third-party website.
18     21. Plaintiff is informed and believes Twitter user @city_tits embedded a
19 substantially similar copy of Plaintiff's copyrighted work, Infringed Image 1, in a
20 Tweet on Twitter.com, reproducing, displaying and distributing it without license,
21 permission or authorization from Morton along with a link to the user's third-party
22 website where additional unauthorized reproductions of Morton's works appeared.
23     22. As soon as she discovered the infringement, Morton, through counsel,
24 submitted a DMCA-compliant Notice and Takedown Report (Report #1) to Twitter,
25 Inc. on July 23, 2020 through Twitter.com's DMCA reporting system.
26     23. On or about September 10, 2020, a copy of Plaintiff's Infringed Image 2
27 appeared without Ms. Morton's authorization on the @city_tits Twitter feed at the
28 URL https://twitter.com/city_tits/status/1304069685680443394 with the following

text: "Genevieve Morton @genevievemorton #Girlswithbigtits #genevievemorton" and a link to a third-party website containing additional infringed works.

24. Morton discovered the Tweet featuring Infringed Image 2 on September 10, 2021 and submitted a DMCA-compliant Notice and Takedown Report (Report #2) to Twitter, Inc. on September 10, 2020 through Twitter.com's DMCA reporting system.

25. Although the Infringed Image 1 and 2 are substantially similar to Plaintiff's Original images, Doe Defendant #1 @city_tits "flipped" the Infringed Images before embedding them into Tweets to avoid detection from automated copyright enforcement tools.

26. Doe Defendant #2, Twitter user @city_tits, used a Twitter developer account to post the Infringed Images.

27. Doe Defendant #2, Twitter user @city_tits, used Twitter's "PHP pics poster" developer tool to post the Infringed Images, embedding it into a Tweet where it was displayed without Plaintiff's authorization on Twitter.com, TweetDeck, Twitter for iPhone, Twitter for iPad, and other related applications.

D. <u>Twitter's access to the Infringed Images and its Saliency Algorithm.</u>

28. Defendant Twitter, Inc. developed, engineered, and deployed an artificially intelligent saliency algorithm[2] ("Saliency Algorithm").

29. Defendant Twitter, Inc., and/or its subsidiaries, had access to the Infringed Images through Twitter user @city_tits who embedded the Infringed Images, and Twitter used the Saliency Algorithm to crop and alter the Infringed Images without Ms. Morton's authorization cropped Ms. Morton's Infringed Images, creating an unauthorized derivative work that it displayed on Twitter's website, mobile application, and third-party applications and stored and cached on servers worldwide, including servers within the United States.

---

[2] Theis, Lucas and Wang, Zehan. Twitter.com, Infrastructure: "Speedy Neural Networks for Smart Auto-Cropping of Images." (available at https://blog.twitter.com/engineering/en_us/topics/infrastructure/2018/Smart-Auto-Cropping-of-Images ) (accessed August 17, 2021).

7

MORTON V. TWITTER, INC.
COMPLAINT

30. Plaintiff is informed and believes Twitter, Inc.'s Saliency Algorithm saved Twitter, Inc. a substantial amount of expense with respect to its CDN at the cost of the integrity of copyrighted photographic works including the Infringed Images and at the expense of the Morton Publicity Rights.

31. The Saliency Algorithm technology was designed and created by male engineers at Twitter, Inc. and Magic Pony, Inc. and cropped photographs. The algorithm was later determined to be biased, resulting in sexist and racist crops, favoring white women and female body parts.[3] This finding was independently confirmed in August 2021.[4]

E. <u>Twitter failed to remove the infringing uses despite notice from Morton.</u>

32. As alleged herein, Morton, through counsel, submitted Report 1 on July 23, 2020. Twitter, Inc. did not respond to this Report or remove Infringed Image 1 until October 28, 2020.

33. As alleged herein, Morton, through counsel, submitted Report 2 on September 10, 2020. Twitter immediately responded on September 10, 2020 with an automatically-generated confirmation notice, stating that they received the Report and issued a ticket number 0172275586.

34. At least one of Twitter.com's users located within the United States viewed the Tweets containing the Infringed Images on @City_Tits Twitter feed on Twitter.com. The Tweet featuring Infringed Image 1 received at least 55 "likes," and the Tweet featuring Infringed Image 2 received at least 12 "likes," indicating that the Infringed Images were actually displayed to at least 67 unique users.

35. Twitter, Inc. did not remove the Infringing Image 2 until October 19, 2020, and did not delete the Tweet or suspend the @city_tits account at that time. Twitter

---

[3] Johnson, Kari. WIRED "Twitter's Photo crop algorithm favors white faces and women," May 19, 2021. (available at: https://www.wired.com/story/twitter-photo-crop-algorithm-favors-white-faces-women/) (accessed August 17, 2021).
[4] Quatch, Katyanna. TheRegister.com "Twitter's AI image-crop algo is biased towards people who look younger, skinnier, and whiter, bounty challenge at DEF CON reveals," Aug. 11, 2021 available at: https://www.theregister.com/2021/08/11/defcon_twitter_ai/

1  Support sent an e-mail update on October 19, 2020 stating that they had removed
2  access to the content.

3  36. Twitter, Inc. did not remove Infringing Image 1 until October 28, 2020, and
4  did not delete the Tweet or suspend the @city_tits account at that time.

5  37. Plaintiff is informed and believes that Twitter Support did not remove all
6  infringing uses from all media lockers and/or Twitter's other servers or data centers
7  on the Content Delivery Network.

8  38. Twitter, Inc. had the contractual and legal right and technical ability to
9  remove the Infringed Images but has not removed the Infringed Images from data
10 storage.

11 39. Twitter, Inc. had the right and ability to remove the Tweet containing the
12 Infringed Image from all Twitter platforms, but Twitter, Inc. did not remove the
13 Tweet when it removed the Infringed Image.

14 40. Twitter, Inc. had the right and ability to suspend the @city_tits user and its
15 related accounts, if any, but Twitter did not suspend the @city_tits user or any of its
16 related accounts on or before October 19, 2021.

17 41. Twitter, Inc. had the right and ability to suspend the @city_tits account at or
18 before the time of the infringement.

19 42. Since 2018, Twitter, Inc. has posted steadily increasing earnings and
20 increasing reports of copyright infringement.

21 43. In the period from July to December 2020, Twitter reportedly received
22 169,659 DMCA takedown notices and reported a compliance rate of 59.9%. In the
23 same period, Twitter received 3,167 counternotices with a 100% restoration rate.
24 Twitter, Inc. publicly disclosed this information in its Global Transparency Report.[5]

25 44. Twitter, Inc.'s earnings include the sale of advertising on its platform and
26    fees to use Twitter's CDN.

---

[5] Twitter, Inc., Global Transparency Report, available at: https://transparency.twitter.com (accessed August 17, 2021).

1  45. Twitter, Inc.'s earnings include selling user data.

2  46. Twitter.com displays, and at all relevant times actually displayed, Tweets in more than a passive manner, selecting and adding Tweets, including the Tweets containing Plaintiff's Infringed Images, to a user's Home timeline that Twitter, Inc. identifies as being relevant or interesting to a user.  Twitter, Inc. also displays "promoted Tweets" or "Retweets" or other posts that a user has not otherwise personally requested to see.

3  47. Twitter claims its "worldwide network directly interconnects with over 3,000 unique networks in many datacenters worldwide."

## CAUSES OF ACTION

### I.   COPYRIGHT INFRINGEMENT / 17 U.S. CODE SECTION 106 (AGAINST DOE DEFENDANT #2)

48. Plaintiff realleges Paragraphs 1-47 and further alleges:

49. Plaintiff is the creator and registered copyright owner of a photograph registered with the U.S. Copyright Office, Copyright Registration Number VA0002210005 and entitled, "Artists Collection 16" and referred to herein as Infringed Image 1.

50. Infringed Image 1 is copyrightable subject matter under 17 U.S. Code Section 102(a)(5), and Plaintiff is the registered copyright owner of Infringed Image 1.

51. A substantially similar copy of Infringed Image 1 appeared on Twitter.com on the @city_tits feed and elsewhere on Twitter's products and applications in the United States without Plaintiff's authorization.

52. Twitter's user, Doe Defendant #2, @city_tits, reproduced Plaintiff's copyrighted photograph through some technological means without Plaintiff's authorization in violation of Plaintiff's exclusive right to reproduce the Infringed Image.

53. Twitter's user, Doe Defendant #2, @city_tits, embedded Plaintiff's

copyrighted photograph on Twitter without authorization in violation of Plaintiff's exclusive right to reproduce the Infringed Image.

54. Doe Defendant #2 displayed the Infringed Image on Twitter in violation of Plaintiff's exclusive right to display the Infringed Image.

55. Doe Defendant #2 distributed the Infringed Image on Twitter in violation of Plaintiff's exclusive right to distribute the Infringed Image.

56. Doe Defendant #2 created a derivative work of the Infringed Image in "flipping" or "mirroring" the original Infringed Image in violation of Plaintiff's exclusive right to create derivative works.

57. Doe Defendant #2 created a Tweet on Twitter using the Infringed Image in violation of Plaintiff's exclusive right to create derivative works.

58. Plaintiff is informed and believes Doe Defendant #2 altered the Infringed Image, and "flipped" or "mirrored" the original image, willfully and in bad faith, to interfere with reverse image search-based copyright enforcement management tools.

59. Plaintiff is informed and believes Doe Defendant #2 provided false information to a domain registrar.

60. Users of Twitter shared Plaintiff's copyrighted works on Twitter's peer-to peer direct share feature without her authorization in violation of Plaintiff's exclusive rights to reproduce, display and distribute.

61. Plaintiff is informed and believes Twitter user @city_tits embedded a substantially similar copy of Infringed Image 2 in a Tweet on Twitter.com, reproducing, displaying and distributing Infringed Image 2 without license, permission or authorization from Morton along with a link to the user's third-party website.

## II. COPYRIGHT INFRINGEMENT / 17 U.S. CODE SECTION 106 (AGAINST TWITTER, INC. AND ITS SUBSIDIARIES)

62. Plaintiff realleges Paragraphs 1-61 and further alleges:.

63. Twitter, Inc. had access to Plaintiff's Infringed Images through its users and embedded the Infringed Images into Twitter's API and/or onto its servers.

64. Images substantially similar to Plaintiff's Infringed Images appeared on Twitter.com, TweetDeck, Twitter for iPad, Twitter for Mac, Twitter for Android, and other applications and search engines without Plaintiff's authorization.

65. Twitter, Inc. and/or its subsidiary Defendant Magic Pony Technology, Inc. cropped and altered the Infringed Images using a proprietary, artificially-intelligent algorithm, creating a derivative work and displaying it, reproducing it, and caching it on Twitter, Inc.'s servers within the United States and worldwide without Plaintiff's authorization and in violation of her exclusive rights under 17 U.S.C. § 106.

66. Plaintiff is informed and believes Twitter, Inc. has not removed the Infringed Images from its data lockers, "virtual buckets" or data storage systems.

67. Twitter, Inc. cached Plaintiff's Infringed Images on its CDN and/or servers in violation the United States without Plaintiff's authorization in violation of Plaintiff's exclusive right of reproduction under 17 U.S.C. § 106.

68. Twitter, Inc. displayed Plaintiff's Infringed Images on Twitter.com and related applications in violation of Plaintiff's exclusive right to display under 17 U.S.C. § 106.

69. At all relevant times, Twitter, Inc. sold advertising including advertising that appeared on user feeds that featured the Infringed Images and Twitter's derivative work.

### III. SECONDARY INFRINGEMENT
### CONTRIBUTORY and VICARIOUS INFRINGEMENT
### (Against Twitter, Inc. Subsidiary Defendants)

70. Plaintiff realleges Paragraphs 1-69 as though fully set forth and further alleges:

71. Defendant Twitter, Inc. and/or its subsidiary Defendant Magic Pony

Technology materially contributed to the infringement by @City_Tits by developing and providing the platform and technology, including a peer-to-peer file sharing system, that enabled the unauthorized reproduction, display and distribution of the Infringed Images.

72. Twitter, Inc. materially contributed to the infringement by @City_Tits by providing data storage and/or server space that store media hidden from public view that multiple users on Twitter.com can access and post using Twitter's developer tools.

73. Twitter, Inc. materially contributed to the infringement by providing users with a bit torrent-style, peer-to-peer network that enables users to privately share copyrighted works through direct messaging and outside of public view.

74. Twitter, Inc. materially contributed to the infringement by providing the technological means to embed Tweets, file share, and permit up to 200 users at a time to access one account through TweetDeck while actively courting infringement by making public statements that they refuse to disclose a repeat infringer policy and otherwise failing to comply with the DMCA.

75. Twitter, Inc. had the right and ability to suspend @city_tits after Plaintiff reported the Tweet and infringing activity on July 23, 2021, but Twitter took no action. Thereafter, with actual knowledge of @city_tits infringing activity, Twitter, Inc. failed to expeditiously disable access to or remove the Infringed Image for over three months, resulting in additional infringement by the same user. When Twitter eventually disabled access to the Infringed Image, it did not exercise its right and ability to the fullest extent possible and incurred a direct financial benefit.

76. Twitter also had the right and ability to control the infringing activity and had actual knowledge of infringement on September 10, 2020, but Twitter failed once again to disable access to or remove the Infringed Image for over one month. When Twitter eventually disabled access to the Infringed Image, it did not exercise its right and ability to the fullest extent possible because it did not delete the Tweet or

suspend the user, and it incurred a benefit by retaining a user and benefiting from the use of the Morton Publicity Rights appearing in the Tweet.

77. At all relevant times, Twitter did not require an account for a member of the public to view the Infringed Images.

78. Twitter acted willfully in failing to suspend the account or disable access to the Tweets or to the Infringed Images stored on its servers, continuing to allow its 330,000,000 subscribers and the worldwide public to access to the Infringed Images and profiting from the infringement.

79. Twitter, Inc. and its subsidiaries acted willfully in encouraging users to upload photographs, including the Infringed Images, to its platform and/or applications to obtain a competitive advantage with other social media platforms and serve its users.

80. Twitter, Inc. and its subsidiaries acted willfully and without regard to Ms. Morton's exclusive rights under 17 U.S.C. §106 in providing services to infringers and, knowing the extent of and propensity for infringement on its platform, willfully ignored the infringement and did not remove the Infringed Images expeditiously.

## IV.   RIGHT OF PUBLICITY
### (against Doe Defendant 1 @city_tits)

81. Plaintiff realleges paragraphs 1-80 as though and further alleges:

82. Doe Defendant #2 (@city_tits) knowingly and willfully used Plaintiff's commercially valuable name, readily identifiable image, likeness and Twitter verified account username without her knowledge, consent, or authorization in the Tweet for the commercial purpose of advertising and promoting its Twitter account and driving user traffic to its third-party website where additional unauthorized, infringed images of Ms. Morton appeared.

83. Defendant Twitter, Inc. provided the instrumentality for the unauthorized use of Morton's publicity rights and profited from the sale of advertising that

1  appeared on web pages and applications that featured Ms. Morton's publicity rights.

2  84. After reviewing the Tweets for copyright infringement, Defendant Twitter, Inc. and its subsidiaries had the right and ability to prevent the ongoing harm by deleting the Tweets or suspending the user but did not exercise that right and ability to the fullest extent, leaving the Tweet visible and harming Plaintiff until January 2021 while profiting from it.

## V.  FALSE LIGHT
### (against Twitter, Inc. and its Subsidiary Defendants)

85. Plaintiff realleges allegations 1-85 and further alleges:

86. Defendants Twitter, Inc. and/or any of its subsidiaries cropped and altered Plaintiff's photographic image in a way that falsely presented Plaintiff's likeness, coloring it with the subliminal, subtle, or obvious sexist and racist biases imposed by the artificially-intelligent algorithmic tool created by engineers.

87. The alteration and cropping of the image, focusing on Ms. Morton's face and breasts, falsely presented Ms. Morton as appearing in pornography, and viewers actually believed the false representation, causing lost income, loss of followers, and other substantial damage to Ms. Morton's personal and professional reputation.

## VI.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

For an Order enjoining Defendants, their officers, agents, employees, temporarily during the pendency of this action and permanently thereafter:

1. From infringing or contributing to the infringement by others the copyright in Plaintiff's works or acting in concert with, aiding and abetting others to infringe said copyright in any way; and

2. From copying, duplicating, selling, licensing, displaying, distributing, or otherwise using without Plaintiff's authorization copies of Plaintiff's works to which Plaintiff is the owner of exclusive rights under the respective copyrights or

making derivative works based thereon; and

3. From selling or otherwise monetizing any and all data that has been collected as a result of the infringement alleged herein; and

4. To remove any and all of Plaintiff's copyrighted Images from servers controlled by Twitter, Inc. including all media lockers or other data storage;

5. For an award of actual damages suffered by Plaintiff as a result of the infringement and any profits of the Defendants attributable to the infringement of Plaintiff's exclusive rights under copyright and to pay such damages to Plaintiff as to this Court shall appear just and proper, or in the alternative, at Plaintiff's election, statutory damages for infringement as set forth in 17 U.S. Code Section 504 in an amount no less than $150,000 per instance at a minimum of 67 instances, and any additional instances of infringement discovered through the course of the litigation; and

6. For an award of damages of at least $750, the statutory minimum under California Civil Code Section 3344(g); and

7. Punitive damages under Section 3344(g);

8. For an award of damages according to proof at trial; and

9. For an award of attorney's fees pursuant to 17 U.S. Code Section 505; and

10. For an award of pre-judgment interest and post-judgment interest in the maximum amount permitted by law;

11. For such other and further relief as the Court deems just and proper.

Plaintiff hereby requests a jury trial on all triable issues.

Dated this 3rd of September 2021.

                            _/s/ Jennifer Holliday____
                            Jennifer Holliday
                            ATTORNEY FOR PLAINTIFF