BRIAN M. WILLEN, (*pro hac vice*)
       bwillen@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the America, 40th Floor
New York, NY 10019-6022
Telephone: (212) 999-5800
Facsimile: (212) 999-5899

VICTOR JIH, SBN 186515
       vjih@wgr.com
REBECCA E. DAVIS, SBN 322765
       becca.davis@wsgr.com
EVE A. ZELINGER, SBN 328862
       ezelinger@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
633 West Fifth Street, Suite 1550
Los Angeles, CA  90071-2027
Telephone: (323) 210-2900
Facsimile: (866) 974-7329

*Attorneys for Defendants Twitter, Inc., Twitter International Company, TweetDeck Inc., and Magic Pony Technology, Inc.*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| GENEVIEVE MORTON,<br><br>             Plaintiff,<br><br>     v.<br><br>TWITTER, INC., et. al,<br><br>             Defendants.<br>_____ | CASE NO.  2:21-cv-07145-GW-JEMx c/w 2:20-cv-10434-GW-JEM<br><br>**THE TWITTER DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS**<br><br>Date: November 22, 2021<br>Time: 8:30 A.M.<br>Crtrm: 9D<br><br>Fact Disc. Cut-Off: February 11, 2022<br>Pretrial Conference: June 30, 2022<br>Trial Date: July 12, 2022<br><br>Judge: Honorable George H. Wu |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION TO DISMISS ...........................................1

I.      INTRODUCTION ...................................................................3

II.     FACTUAL AND PROCEDURAL BACKGROUND ........................5

III.    ARGUMENT ..........................................................................7

        A.    TWITTER INTERNATIONAL IS NOT SUBJECT TO
              PERSONAL JURISDICTION IN CALIFORNIA .....................7

        B.    PLAINTIFF FAILS TO STATE A CLAIM AGAINST
              ANY OF THE TWITTER SUBSIDIARIES............................10

              1.    Plaintiff Fails to State A Claim Against Twitter
                    International.................................................................11

              2.    Plaintiff Fails to State A Claim Against TweetDeck .....11

              3.    Plaintiff Fails to State a Claim Against Magic Pony .....12

        C.    PLAINTIFF'S  FALSE LIGHT CLAIM FAILS AS A
              MATTER OF LAW AND IS BARRED BY SECTION
              230 .................................................................................13

              1.    Plaintiff Fails To State A False Light Claim..................13

              2.    Plaintiff's False Light Claim Is Barred By Section
                    230 .........................................................................17

IV.     CONCLUSION.....................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Aisenson v. American Broadcasting Co.*,
220 Cal. App. 3d 146 (1990)................................................................15, 16

*Albert v. Williams*,
No. SACV 18-00448-CJC(JDEx), 2019 U.S. Dist. LEXIS 490
(C.D. Cal. Jan. 2, 2019).........................................................................13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................................................................10, 11, 12

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
874 F.3d 1064 (9th Cir. 2017)...................................................................9

*Barnes v. Yahoo!, Inc.*,
570 F.3d 1096 (9th Cir. 2009)..................................................................17

*Bristol-Myers Squibb Co. v. Super. Ct.*,
137 S.Ct. 1773 (2017) ..........................................................................8, 9

*Brodeur v. Atlas Entm't, Inc.*,
248 Cal. App. 4th 665 (2016)...................................................................13

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)................................9

*Carafano v. Metrosplash.com., Inc.*,
339 F.3d 1119 (9th Cir. 2003)..................................................................18

*Chavez v. United States*,
683 F.3d 1102 (9th Cir. 2012)...........................................................10, 12

*Cross v. Facebook, Inc.*,
14 Cal. App. 5th 190 (2017).....................................................................4

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) ............................................................................8, 9

*Daoud v. Societe Generale De Banque Au*,
No. SACV-21-00353-CJC, 2021 U.S. Dist. LEXIS 154139
(C.D. Cal. July 6, 2021).........................................................................8

*De Havilland v. FX Networks, LLC*,
21 Cal. App. 5th 845 (2018)...............................................................13, 16

*Dodds v. American Broadcasting Co.*,
145 F.3d 1053 (9th Cir. 1998)..................................................................16

*Dyroff v. Ultimate Software Grp., Inc.*,
　　934 F.3d 1093 (9th Cir. 2019) ....................................................... 18

*Flowers v. Carville*,
　　310 F.3d 1118 (9th Cir. 2002) ....................................................... 13

*Force v. Facebook, Inc.*,
　　934 F.3d 53 (2d Cir. 2019) ............................................................ 18

*Harris v. City of Seattle*,
　　152 F. App'x 565 (9th Cir. 2005) .................................................. 16

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
　　466 U.S. 408 (1984) ......................................................................... 8

*Hosszu v. Barrett*,
　　716 F. App'x 622 (9th Cir. 2017) .................................................. 13

*Jones v. Dirty World Entm't Recordings LLC*,
　　755 F.3d 398 (6th Cir. 2014) ......................................................... 17

*Keates v. Koile*,
　　883 F.3d 1228 (9th Cir. 2018) ....................................................... 11

*Khoja v. Orexigen Therapeutics, Inc.*,
　　899 F.3d 988 (9th Cir. 2018) ......................................................... 15

*Lambert v. Martinson*,
　　No. 10cv01978: JLS (RBB) 2011 U.S. Dist. LEXIS 154034
　　(S.D. Cal. Dec. 7, 2011) ........................................................... 11, 12

*Marshall's Locksmith Serv., Inc. v. Google, LLC*,
　　925 F.3d 1263 (D.C. Cir. 2019) ..................................................... 18

*McHenry v. Renne*,
　　84 F.3d 1172 (9th Cir. 1996) ........................................................... 7

*Morton v. Twitter*,
　　2:20-cv-10434-GW-JEM (C.D. Cal Feb. 19, 2021), ECF No. 30,
　　slip op. ................................................................................... 4, 6, 17

*Newton v. National Broadcasting Co., Inc.*,
　　930 F.2d 662 (9th Cir. 1990) ......................................................... 16

*O'Kroley v. Fastcase, Inc.*,
　　831 F.3d 352 (6th Cir. 2016) ..................................................... 18, 19

*Perfect 10, Inc. v. Giganews, Inc.*,
　　847 F.3d 657 (9th Cir. 2018) ......................................................... 12

*Piccirillo v. TestEquity, Inc.*,
   No. CV 14-8590-MWF (Ex), 2015 WL 4778823 (C.D. Cal. Aug.
   13, 2015) ................................................................................................ 7

*Ranza v. Nike, Inc.*,
   793 F.3d 1059 (9th Cir. 2015) ........................................................ 8, 9

*Reddy v. Adarsh Developers*,
   No. EDCV-19-406-JGB, 2019 WL 4451235 (C.D. Cal. July 24,
   2019) ..................................................................................................... 9

*Schwarzenegger v. Fred Martin Motor Co.*,
   374 F.3d 797 (9th Cir. 2004) ............................................................... 9

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) ............................................................... 8

*Walden v. Fiore*,
   571 U.S. 277 (2014) ............................................................................. 9

*Wrigley v. Aquaviva*,
   No. CIV-2:10-7703-WBS-EFB, 2010 U.S. Dist. LEXIS 120115
   (E.D. Cal. Nov. 10, 2010) .................................................................. 16

*Yagman v. Kelly*,
   No. CV-117-6022-MWF, 2018 U.S. Dist. LEXIS 203393
   (C.D. Cal. Mar. 18, 2018) .................................................................... 8

*Yearby v. Am. Nat'l Ins. Co.*,
   No. 20-cv-09222-EMC, 2021 U.S. Dist. LEXIS 164040
   (N.D. Cal. Aug. 30, 2021) .................................................................... 9

**STATUTES**

Cal. Civ. Code § 3344 ................................................................................. 6

**RULES**

Fed. R. Civ. P. 12(b)(2) ..................................................................... *passim*

Fed. R. Civ. P. 12(b)(6) ..................................................................... *passim*

## NOTICE OF MOTION AND MOTION TO DISMISS

## TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on November 22, 2021 at 8:30 a.m., or as soon thereafter as this matter can be heard before the Honorable George H. Wu of the United States District Court for the Central District of California, at 350 West 1st Street, Los Angeles, CA 90012, Defendants Twitter, Inc., Twitter International Company, TweetDeck, Inc., and Magic Pony Technology, Inc. (collectively, the "Twitter Defendants") will, and hereby do, move this Court for the following order:

1. Dismissing Plaintiff Genevieve Morton's Complaint with prejudice as to Defendant Twitter International Company for lack of personal jurisdiction;

2. Dismissing all causes of action asserted in the Complaint as to Defendants Twitter International Company, TweetDeck, Inc. and Magic Pony Technology, Inc. for failure to state a claim;

3. Dismissing the fifth cause of action for false light invasion of privacy with prejudice as to Defendants Twitter, Inc., Twitter International Company, TweetDeck, Inc. and Magic Pony Technology, Inc. for failure to state a claim and as barred by 47 U.S.C. § 230.

This motion is made pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), and is based on this Notice of Motion and Motion to Dismiss, the accompanying Memorandum of Points and Authorities, the Declaration of Nina Shin, the Declaration of Rebecca E. Davis, and all files and pleadings in this action and any other matter that may properly come before this Court at or before the time of hearing on this matter.

Counsel for the Twitter Defendants attempted to meet and confer with Plaintiff's counsel multiple times pursuant to Local Rule 7-3 in regard to this motion, but Plaintiff's counsel failed to respond to any of those communications and did not make herself available for the requested meet and confer. Declaration of Rebecca E.

Davis ("Davis Decl.") ¶¶ 2-5. On October 13, 2021, following several emails requesting a Rule 7-3 conference, counsel for the Twitter Defendants sent Plaintiff's counsel an email laying out the bases for Twitter's motion to dismiss and asked whether Plaintiff would stipulate the relief sought. *Id*. ¶¶ 2-4. Again, Plaintiff's counsel failed to respond in any way to that message. *Id*. ¶ 5.

Dated:  October 18, 2021            Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI

By: */s/ Victor Jih*
                    Victor Jih

Attorney for the Twitter Defendants

# I.    INTRODUCTION

Plaintiff Genevieve Morton is a fashion model who created and sold photographs of herself on her website. Nearly a year after first commencing litigation against Twitter, Inc. ("Twitter") based on the posting of certain images of her on the Twitter platform by a third-party user ("@SpyIRL"), Plaintiff has now filed a new complaint based on the same alleged fact pattern. This time, the claims are based on the actions of a different unknown Twitter user with the account name "@city_tits," sued here as an anonymous "Doe Defendant #2."[1] As before, Plaintiff does not—and could not—allege that Twitter created the content at issue or chose to post the photographs at issue. Plaintiff further acknowledges that Twitter took down those images after receiving takedown notices, nearly a year before this lawsuit was filed, and suspended the @city_tits account at that time.

Nevertheless, Plaintiff's new lawsuit asserts a jumbled array of claims against both Twitter and various Twitter subsidiaries, including a foreign entity that has no discernable connection to this matter, as well as an unnamed Twitter employee.[2] This Complaint fails on multiple grounds.

*First*, Defendant Twitter International Company ("Twitter International") should be dismissed both under Fed. R. Civ. P. 12(b)(2) and 12(b)(6). As a foreign corporation with no relevant connections to California, Twitter International is not subject to personal jurisdiction in this Court. Moreover, the Complaint fails to state a claim against Twitter International, as Plaintiff does not assert that Twitter International played any role in connection with the causes of action she asserts generally against the so-called "Subsidiary Defendants."

---

[1] Undersigned counsel do not represent any Twitter users, including Doe Defendant #2.

[2] While the Complaint identifies that employee as "Doe Defendant #1," there is no indication that the unnamed individual has been served. In any event, the Complaint does not appear to actually assert any cause of action against that employee, and it certainly provides no basis for holding such an individual personally liable for any alleged wrongdoing.

*Second*, the Complaint similarly fails to assert any viable cause of action against Defendants TweetDeck, Inc. ("TweetDeck") and Magic Pony Technology, Inc. ("Magic Pony"). As with Twitter International, the Complaint offers no actual allegations that TweetDeck did anything in regard to the claims at issue. As for Magic Pony, the only apparent basis for Plaintiff to have named it as a defendant is that it allegedly "designed and created" an algorithm that Plaintiff claims was later used to crop preview versions of images posted by Twitter users. But the Complaint offers nothing to suggest why merely creating such an algorithm supports holding Magic Pony (assuming it still exists as a separate entity) liable for copyright infringement or anything else.

*Finally*, Plaintiff's cause of action for "false light" (Count V) fails to state a viable claim against any defendant. This claim is based on the alleged use of Twitter's automated cropping algorithm. But Plaintiff does not—and could not—allege the required elements of a false light claim, including that any such cropping was an actual "assertion of fact" about her (much less a false one), or that Twitter acted with the "actual malice" required in cases involving public figures, as Plaintiff purports to be. On top of that, any false light claim against Twitter or its subsidiaries based on the alleged use of a general tool that automatically crops user-created images is barred by Section 230 of the Communications Decency Act, 47 U.S.C. 230, which (as this Court has already found) precludes holding online services liable for "traditional editorial functions" performed in connection with user-submitted content. *See Morton v. Twitter,* 2:20-cv-10434-GW-JEM (C.D. Cal Feb. 19, 2021)*,* ECF No. 30, slip op. at 7, 10 ("*Morton I*").[3]

---

[3] The Complaint also includes a right of publicity claim (Count IV), but it appears that claim is not asserted against any Twitter entity, but instead solely against the user Doe Defendant #27 (@city_tits). Compl. ¶ 82-84. Of course, any effort to assert this claim against the Twitter entities would be barred by Section 230, as this Court has already held. *Morton I*, ECF No. 30, at 7, 10. Such a claim would also fail as a matter of law. *See, e.g.*, *Cross v. Facebook, Inc.*, 14 Cal. App. 5th 190 (2017) (rejecting right of publicity claim against Facebook for publishing content created by third parties).

## II.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is a fashion model who is in the business of "creating, commissioning and selling and/or licensing copyrighted collections of copyrighted photographs," many of which feature her nude. Compl. ¶¶ 13-14. According to Plaintiff's Complaint, copies of two of her photographs were used, without her consent, in two Tweets posted on Twitter's service by "Doe Defendant #2," a third-party Twitter user within the United States who operated under the account name @city_tits. *Id*. ¶¶ 11, 20, 23.

Defendant Twitter provides users located within the United States access to Twitter.com, an online social media service with over 180 million daily active users. Compl. ¶¶ 6, 16-17, 19. Defendant Twitter International is a wholly owned subsidiary of Twitter that serves Twitter.com users located within the European Union, EFTA States and United Kingdom. *Id*. ¶ 7; Declaration of Nina Shin ¶ 2 ("Shin Decl."). The Complaint does not allege that Twitter International is at home in California or indeed that it has any connection to this State or to the events giving rise to this case—nor could it. Compl. ¶ 7; *see also* Shin Decl. ¶¶ 3-4.

Defendant TweetDeck is a social media dashboard that allows multiple users to share access to a single Twitter.com account. Compl. ¶ 8. The Complaint does not allege what relationship TweetDeck has to Twitter or any of the other Twitter-related Defendants. *Id*. Defendant Magic Pony is a technology company that develops artificial intelligence and machine learning technology used to improve image and video quality. *See* Compl. ¶ 9. According to the Complaint, Twitter acquired Magic Pony in 2016. *Id*. The Complaint makes no allegations about anything Magic Pony may have done after that. *Id*.

The Complaint makes clear that the instigator of the wrongful conduct alleged here was the user @city_tits. It was that user who allegedly created and posted the Tweets at issue, who decided to include the two allegedly unauthorized images of Plaintiff in those Tweets, and who allegedly "flipped" Plaintiff's photographs to avoid

detection from Twitter's automated copyright enforcement tools. Compl. ¶¶ 20-21, 23 25. Plaintiff makes no allegation that any of the Twitter-related Defendants were responsible for creating the Tweets at issue, "flipping" them to avoid copyright detection, or deciding to post them on Twitter's service—all of this is alleged only against @city_tits. *Id*. ¶¶ 20-21, 23, 25-27.

According to the Complaint, Twitter took down the @city_tits Tweets in October 2020, after it received takedown notices from Plaintiff in July and September of the same year. Compl. ¶¶ 32-33, 35-36. Twitter also suspended the @city_tits account, and it is undisputed that both the photographs and the Tweets at issue are no longer publicly accessible on Twitter. *Id*. ¶¶ 32, 35, 40.

Nevertheless, Plaintiff filed this lawsuit as a follow-up to an earlier case she filed against Twitter that is pending before this Court—*Morton I*—with which it has now been consolidated. *See Morton I*, ECF No. 65. That case asserted copyright infringement claims against Twitter—along with various state law claims (including a claim for violation of the right of publicity under Cal. Civ. Code § 3344 and for "false light")—similarly based on the posting of Tweets by a different Twitter user (@SpyIRL) that allegedly included certain nude photographs that Plaintiff has offered for sale on her publicly available website.

On February 22, 2021, this Court dismissed all of Plaintiff's non-copyright claims in *Morton I*, finding that Twitter was protected by Section 230 of the Communications Decency Act ("Section 230") and that Plaintiff had otherwise failed to state a claim. *See Morton I*, ECF No. 30 at 6 ("All of Morton's non-copyright claims attempt to treat Twitter as being equivalent to SpyIRL for purposes of considering liability for the latter's tweets….These types of claims have all been found by courts to be barred by Section 230.").

On September 3, 2021, as the discovery period in *Morton I* was coming to an end, Plaintiff filed this new lawsuit. In her new Complaint, she asserts claims not just against Twitter, Inc., but against certain of its subsidiaries (Twitter International,

TweetDeck, Magic Pony), as well as an unnamed Twitter employee, who supposedly manages Twitter's DMCA policy. Compl. ¶¶ 6-10. But other than naming these entities as defendants, the Complaint barely mentions any of them in its operative allegations, and when it does, it lumps them together as "Subsidiary Defendants." *Id*. ¶¶ 62-80, 85-87. This improper group pleading makes it unclear what each of these defendants is supposed to have done wrong, what role they allegedly played in the events giving rise to this case, or why each was sued. *See, e.g.*, *McHenry v. Renne*, 84 F.3d 1172, 1177-79 (9th Cir. 1996) (affirming dismissal of complaint because "no attempt is made to match up the specific factual allegations and the specific legal claims to a specific defendant."); *Piccirillo v. TestEquity, Inc.*, No. CV 14-8590-MWF (Ex), 2015 WL 4778823, at *4 (C.D. Cal. Aug. 13, 2015) (granting motion to dismiss based on group pleading).

Nevertheless, Plaintiff claims generally that "Twitter Inc. and its Subsidiaries" are liable for the following cause of action: direct copyright infringement (count II), secondary copyright infringement (count III), and false light (count V). In contrast, Counts I and IV (for copyright infringement and violation of the right of publicity, respectively) are asserted only against the Doe Defendant @city_tits, and thus not at issue in this motion. *Accord supra* note 3. Defendants now move to dismiss under Rules 12(b)(2) and 12(b)(6).

## III.   ARGUMENT

### A.   TWITTER INTERNATIONAL IS NOT SUBJECT TO PERSONAL JURISDICTION IN CALIFORNIA

Twitter International is a foreign company "registered in Ireland" that offers services to "users in the E.U., EFTA States, or in the United Kingdom." Compl. ¶ 7. There are no allegations in the Complaint that suggest that Twitter International is (or could be) subject to personal jurisdiction in this Court in this case. Because Plaintiff has not (and cannot) carry her burden of establishing personal jurisdiction, Twitter International should be dismissed under Fed. R. Civ. P. 12(b)(2).

There are two bases for exercising personal jurisdiction over nonresident defendants: (1) "general jurisdiction," which arises when a defendant's activities in the forum are sufficiently "substantial" or "continuous and systematic" to justify the exercise of jurisdiction over it in all matters; and (2) "specific jurisdiction," which arises when a defendant's specific contacts with the forum give rise to the claim in question. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984); *accord Bristol-Myers Squibb Co. v. Super. Ct*., 137 S.Ct. 1773, 1779-80 (2017). The burden of establishing jurisdiction (on either theory) lies with the plaintiff. *See Ranza v. Nike, Inc*., 793 F.3d 1059, 1068 (9th Cir. 2015). And "mere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden." *Daoud v. Societe Generale De Banque Au*, No. SACV-21-00353-CJC (KESx), 2021 U.S. Dist. LEXIS 154139, at \*4-5 (C.D. Cal. July 6, 2021) (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007)); *accord Yagman v. Kelly*, No. CV-117-6022-MWF (PJWx), 2018 U.S. Dist. LEXIS 203393, at \*26 (C.D. Cal. Mar. 18, 2018) (dismissing complaint where plaintiff "failed to plausibly allege the existence of personal jurisdiction").

For general jurisdiction, Plaintiff must demonstrate that Twitter International is "at home" in California. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). "The paradigmatic locations where general jurisdiction is appropriate over a corporation are its place of incorporation and its principal place of business"—and "[o]nly in an 'exceptional case' will general jurisdiction be available anywhere else." *Ranza*, 793 F.3d at 1069. Twitter International is incorporated in, and has its principal place of business in, the Republic of Ireland. Compl. ¶ 7. And Plaintiff does not even try to allege that Twitter International is "at home" in California. Indeed, the Complaint's only allegation regarding personal jurisdiction is a general collective allegation that the Defendants "conduct substantial business in the State of California and can be found in this judicial district." *Id*. ¶ 2. But even taking that threadbare—and false,

*see* Shin Decl. ¶¶ 2-4—allegation as true, it is not remotely sufficient. *See Ranza*, 793 F.3d at 1070 (explaining that "'doing business' has long been abandoned as the test for general jurisdiction"); *Daimler*, 571 U.S. at 138 (rejecting as "unacceptably grasping" the theory that a corporation is subject to general jurisdiction in every State in which it "engages in a substantial, continuous, and systematic course of business"); *accord Reddy v. Adarsh Developers*, No. EDCV-19-406-JGB (SPx), 2019 WL 4451235, at *4 n.1 (C.D. Cal. July 24, 2019) ("The Complaint alleges that Adarsh has 'substantial and continuous business contacts with California,' but mere allegations are insufficient for Plaintiff to make out a prima facie case of personal jurisdiction").

The Complaint falls equally short of establishing specific personal jurisdiction, which turns on the relationship between the forum, the defendant, and the litigation. *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014); *Bristol-Myers Squibb*, 137 S.Ct. at 1780. Three factors must be met: (1) the out-of-state defendant purposefully directed its activities toward residents of the forum state or otherwise established contacts with the forum state, (2) Plaintiff's claim arises out of or results from defendant's forum-related contacts, and (3) the forum's exercise of personal jurisdiction in the particular case must be reasonable—i.e., it must comport with "fair play and substantial justice." *Yearby v. Am. Nat'l Ins. Co.*, No. 20-cv-09222-EMC, 2021 U.S. Dist. LEXIS 164040, at *27 (N.D. Cal. Aug. 30, 2021) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)); *accord Walden*, 571 U.S. at 284 ("For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State."); *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068-69 (9th Cir. 2017). Plaintiff bears the burden of satisfying the first two prongs. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

Here, Plaintiff has failed to allege any sort of relationship between Twitter International, herself, or the litigation. Indeed, the Complaint offers no allegations that Twitter International did *anything* relevant to this lawsuit, much less that any supposedly "suit-related conduct" has a substantial connection to California. Indeed, what little Plaintiff does allege about Twitter International only confirms that it has no link to this case (or this State). Plaintiff asserts that "[a]t all relevant times, Twitter International Company offered [ ] access to Twitter.com to users *in the E.U., EFTA States or the United Kingdom*," but the Complaint makes clear that the user who posted the photographs giving rise to Plaintiff's entire suit—@city_tits—was "operating at IP Address 172.64.34.200, a server located *within the United States*." Compl. ¶¶ 7, 11 (emphases added). Indeed, neither Twitter International nor any of its employees were involved in Twitter's actions in removing from Twitter's platform the two images identified in the Complaint. Shin Decl. ¶ 4. And neither Twitter International nor any of its employees were involved in Twitter's review of the Digital Millennium Copyright Act takedown notices identified in the Complaint. *Id.*

In short, on the face of the Complaint, there is no basis for this Court to assert personal jurisdiction over Twitter International in this case. Under Fed. R. Civ. 12(b)(2), the claims against Twitter International must be dismissed.

## B.   PLAINTIFF FAILS TO STATE A CLAIM AGAINST ANY OF THE TWITTER SUBSIDIARIES

To avoid dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] court discounts conclusory statements, which are not entitled to the presumption of truth, before determining whether a claim is plausible." *Chavez v. United State*s, 683 F.3d 1102, 1108 (9th Cir. 2012). Nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation or an unadorned, the-defendant-unlawfully-harmed-me

1   accusation." *Keates v. Koile*, 883 F.3d 1228, 1243 (9th Cir. 2018) (internal citation
2   omitted).

### 1. Plaintiff Fails to State A Claim Against Twitter International

4   Even apart from the lack of personal jurisdiction, the Complaint fails to state
5   any viable claim against Twitter International. Outside of the caption page, the
6   Complaint barely mentions Twitter International. Indeed, none of the allegations
7   relating to any of the causes of action—or included in the "Facts" section of the
8   Complaint (¶¶ 13-87)—make any reference whatsoever to Twitter International. The
9   only substantive allegations even remotely directed at Twitter International are that
10  "Twitter and/or Twitter International offered its services to Doe Defendant #2" and
11  that "Twitter and/or its subsidiary Twitter International Company had the right to
12  terminate services to the account holder operating the @city_tits account." Compl.
13  ¶ 11. Those threadbare allegations do not state a claim for copyright infringement
14  (or anything else). *Iqbal*, 556 U.S. at 665, 678. Moreover, as explained above, the
15  Complaint affirmatively undercuts the idea that Twitter International has anything
16  to do with this case. *See, e.g.*, *Lambert v. Martinson*, No. 10cv01978 JLS(RBB),
17  2011 U.S. Dist. LEXIS 154034, at *12 (S.D. Cal. Dec. 7, 2011) (dismissing
18  Defendant Valenzuela from action because plaintiff's complaint failed to "direct any
19  substantive allegations against [him and he was] merely mentioned as a Defendant
20  who 'was an agent of the CDCR at all times.'").

### 2. Plaintiff Fails to State A Claim Against TweetDeck

22  Plaintiff similarly fails to state a claim against TweetDeck. The Complaint
23  simply names TweetDeck as a defendant (¶ 8), but makes no actual allegations about
24  what it supposedly did in regard the claims asserted generally against the "Twitter
25  Subsidiaries." Indeed, other than through improper group pleading, the Complaint
26  essentially ignores TweetDeck. Plaintiff makes a stray allegation that "[i]mages
27  substantially similar to Plaintiff's Images appeared on… TweetDeck," along with
28  other Twitter platforms (*id*. ¶ 64) and asserts that "Twitter, Inc. materially

contributed to the infringement by… [permitting] up to 200 users at a time to access one account through TweetDeck." Compl. ¶¶ 64, 74. Whatever that means, it does not state a viable claim for copyright infringement (or any other cause of action) against TweetDeck. *See, e.g.*, *Chavez*, 683 F.3d at 1106-08 (dismissing claims against defendants where only conclusory allegations were directed at them); *Lambert*, 2011 U.S. Dist. LEXIS 154034, at *12.

### 3.  Plaintiff Fails to State a Claim Against Magic Pony

The same problem extends to Magic Pony. Plaintiff's only apparent basis for naming Magic Pony as a defendant is that "male engineers at . . . Magic Pony" supposedly "designed and created" the Saliency Algorithm that was used on Twitter's service to crop photographs. Compl. ¶ 31. But other than a threadbare and conclusory "either/or" allegation (¶ 65), there is nothing to suggest that Magic Pony did anything other than simply create a piece of general-use cropping technology. The Complaint offers no facts to suggest that Magic Pony made the decision to use the cropping algorithm in connection with the @city_tits Tweets at issue (if in fact that happened at all), or was involved in the actual cropping process in any way other than as the original creator of the underlying technology.

Simply put, the Complaint does not "'allege facts' that, taken as true, are 'suggestive of illegal conduct'" by Magic Pony. *See Iqbal*, 556 U.S. at 696 (citation omitted). There is no basis for finding, for example, that Magic Pony itself violated any of Plaintiff's exclusive rights under the Copyright Act, *cf. Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 666 (9th Cir. 2018) ("direct liability must be premised on conduct that can reasonably be described as the *direct cause* of the infringement"), or did anything that could subject it to contributory or vicarious copyright liability, which requires, among other things, knowledge of, or direct financial benefit from, specific third-party infringement (*id*. at 670, 672-73), or did anything to support a viable false light claim (*see infra* section III(B)(4)). As with

Twitter International and TweetDeck, any claims against Magic Pony must be dismissed under Rule 12(b)(6).

### C.    PLAINTIFF'S  FALSE LIGHT CLAIM FAILS AS A MATTER OF LAW AND IS BARRED BY SECTION 230

Finally, Plaintiff's false light claim fails as a matter of law. This claim is apparently based on the alleged cropping of the images that appeared in the third-party @city_tits Tweets, via a general-purpose "Saliency Algorithm" that Twitter allegedly used to crop certain preview images posted on Twitter. Compl. ¶¶ 31, 86-87. But Plaintiff has failed to allege required elements of a false light claim against Twitter or its subsidiaries and even if she had, that claim would be barred by Section 230.

### 1.  Plaintiff Fails To State A False Light Claim

To plead a false light claim, Plaintiff would have to plausibly allege: (1) that the cropping of her images was an assertion of fact (2) that created a false impression about her (3) that was highly offensive to a reasonable person; and (4) because she purports to be a public figure (Compl. ¶ 14), that the cropping was done with actual malice towards her. *See De Havilland v. FX Networks, LLC*, 21 Cal. App. 5th 845, 865 (2018); *accord Brodeur v. Atlas Entm't, Inc.*, 248 Cal. App. 4th 665, 678 (2016) ("A 'false light' cause of action is in substance equivalent to a libel claim, and should meet the same requirements of the libel claim, including proof of malice."); *Flowers v. Carville*, 310 F.3d 1118, 1132 (9th Cir. 2002) ("False light, like defamation, requires at least an implicit false statement of objective fact… [a]nd just like public figure defamation, it requires actual malice—knowing or reckless disregard of the truth."). The Complaint fails to allege these elements.

***First***, Plaintiff makes no plausible allegation that the cropping of her photographs was a false assertion of fact by Twitter. *See, e.g.*, *Hosszu v. Barrett*, 716 F. App'x 622, 624 (9th Cir. 2017) (dismissing false light claim because "collective articles [were] not statements implying the assertion of objective facts"); *Albert v.*

*Williams*, No. SACV 18-00448-CJC(JDEx), 2019 U.S. Dist. LEXIS 490, at *10-11 (C.D. Cal. Jan. 2, 2019) (same, where statements at issue were not false factual assertions). This case does not involve any actual statements by Twitter, and there is no allegation that Twitter made any kind of deliberate assertion, whether verbal or otherwise, about Plaintiff. Twitter, of course, did not post the Tweets or photographs at issue, and the claim here instead arises solely from the use of a general-purpose cropping algorithm that automatically formats all images across Twitter's service. *See* Compl. ¶ 28 & n.2 (citing article discussing operation of Twitter's algorithm). But neither the Complaint nor common sense provides any basis for concluding that such automatically cropped preview images amount to a factual assertion at all, much less one that was provably false. Plaintiff does not (and could not) allege that Twitter's algorithm or any cropping resulting from it was specifically aimed at Plaintiff or was intended to communicate anything about her. That alone is inconsistent with any false light claim.

Plaintiff tries to escape this reality by vaguely alleging that the "alteration and cropping of the images, focusing on Ms. Morton's face and breasts, falsely presented Ms. Morton as appearing in pornography." Compl. ¶ 87. The Complaint does not explain this theory, much less how the mere cropping of an image (especially by an automated general use algorithm) somehow could be understood as a factual assertion that Plaintiff was involved in pornography. It is telling in this regard that the Complaint does not include any screenshots depicting how the cropped version of her images in the @city_tits Tweets supposedly look—or indeed any actual description of the supposed cropping. There certainly is no suggestion that the cropping algorithm added anything to or otherwise altered the underlying image, much less in ways that plausibly could have transformed the entire import of

photographs that Plaintiff herself claims to have created and offered to the public for sale and licensing (Compl. ¶¶ 13-14).[4]

Simply put, the Complaint does not explain how the automated cropping of her images amounted to a *false factual assertion* by Twitter that Plaintiff was involved in pornography. This case is akin to *Aisenson v. American Broadcasting Co.*, 220 Cal. App. 3d 146 (1990), which rejected a false light claim based on the defendant's publication of a video depicting the plaintiff. The court explained that "[p]hotographs are not actionable if they are fair and accurate depictions of the person and scene in question, even if they place the person in a less than flattering light, so long as the photographs do not surpass the limits of decency by being highly offensive to persons of ordinary sensibilities." *Id*. at 161. The plaintiff there objected "that the broadcasters chose to freeze the film at the moment he appeared to spot the videocamera, and he claims that he was thereby unfairly portrayed. His

---

[4] It is noteworthy in this regard that the entire basis for Plaintiff's objection to the Saliency Algorithm—that it supposedly resulted in "sexist" crops favoring "female body parts" (Compl. ¶ 31)—is refuted by the very document the Complaint cites to support that allegation, an article in Wired magazine (*id*., note 3 (https://www.wired.com/story/twitter-photo-crop-algorithm-favors-white-faces-women/)). That article, which the Court can consider on this motion under the incorporation-by-reference doctrine, *see Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1004 (9th Cir. 2018), says the opposite of what Plaintiff now claims. As the article explains:

> In the newly released study, Twitter researchers said they did *not* find evidence that the photo cropping algorithm favors women's bodies over faces. To determine this, they fed the algorithm 100 randomly chosen images of people identified as women, and found that only three centered bodies over faces. Researchers suggest this is due to the presence of a badge or jersey numbers on people's chests… That assessment also found that the AI for predicting the most interesting part of a photo does not focus on women's bodies over women's faces.").

Plaintiff cannot state a false light claim by blatantly misrepresenting the very materials her Complaint purports to rely on.

disappointment that a more flattering picture was not broadcast (or that none at all was broadcast) does not rise to the level of a compensable claim for invasion of privacy." *Id*. So too here, Plaintiff's objection to the fact that her images were cropped is not actionable, at least where there is no plausible allegation that the cropping itself transformed the nature of the images to something that surpassed "the limits of decency." *Id*.

**Second**, the Complaint does not even purport to allege actual malice, as she must as a public figure (Compl. ¶¶ 14-15 (alleging that Morton is an internationally-recognizable model whose name and likeness have substantial value" and "a following of over 83,000 users on Twitter.com and over 3.5 million followers across other social media platforms.")). *See, e.g.*, *Harris v. City of Seattle*, 152 F. App'x 565, 567 (9th Cir. 2005). To meet this standard, a "general allegation of malice will not suffice; plaintiff must allege detailed facts showing defendant's ill will towards him." *Wrigley v. Aquaviva*, No. CIV-2:10-7703-WBS-EFB, 2010 U.S. Dist. LEXIS 120115, at *22-23 (E.D. Cal. Nov. 10, 2010) (dismissing claim for failure to allege actual malice); *accord De Havilland*, 21 Cal. App. 5th at 870 (same). Here, however, there is not even a general allegation of malice.

Nor could there be. In "cases where the claimed highly offensive or defamatory aspect of the portrayal is implied, courts have required plaintiffs to show that the defendant 'intended to convey the defamatory impression.'" *DeHavilland*, 21 Cal. App. 5th at 869-70 (quoting *Dodds v. American Broadcasting Co.*, 145 F.3d 1053, 1063-1064 (9th Cir. 1998)) (explaining that "because actual malice is a 'deliberately subjective' test, liability cannot be imposed for an implication that merely 'should have been foreseen'") (quoting *Newton v. National Broadcasting Co., Inc.*, 930 F.2d 662, 680 (9th Cir. 1990)). There is nothing like that here. Plaintiff's only relevant allegation is that Twitter's "Saliency Algorithm," which automatically crops images to make it easier for Twitter users to preview images posted by users, was designed in a way that resulted in unconscious biases around

race and gender. Compl. ¶¶ 31, 86; *but see supra* note 4. That is worlds away from any plausible claim of actual malice directed at Plaintiff. Even if the algorithm had unintended biases that caused certain images to be cropped in ways "favoring white women" (¶ 31), that does not remotely support the idea that Twitter *intended* to portray Ms. Morton in a false light, much less intended to suggest that she was involved in pornography. Without that, there could be no plausible allegations of actual malice here—and no basis for a false light claim.

## 2.  Plaintiff's False Light Claim Is Barred By Section 230

There is an independent, fatal problem with Plaintiff's false light claim. This Court has already held that Twitter is protected by Section 230 from liability for false light claims premised on the posting or presence of Plaintiff's images on its service by third-party users. *Morton I*, ECF No. 30 at 6. Plaintiff cannot get around that result by framing her claim based on the automated cropping of user-submitted images via a general-use "algorithmic tool" (Compl. ¶ 86). An online service provider's use of such an algorithm on content created and posted by third parties falls comfortably within Section 230's protections.

As this Court has explained, "[a]t its core, § 230 bars 'lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content.'" *Morton I*, ECF No. 30 at 3 (citing *Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398, 407 (6th Cir. 2014)). But Plaintiff's false light claim seeks to do just that. Plaintiff does not allege that Twitter was responsible for creating or posting the images included in the @city_tits Tweets—that is indisputably third-party content. Instead, she seeks to hold Twitter liable for automated acts performed on that third-party content by Twitter's cropping algorithm. But those acts are quintessential editorial functions performed by a publisher. As the Ninth Circuit has explained, "publication involves reviewing, ***editing,*** and deciding whether to publish or to withdraw from publication third-party content." *Barnes v. Yahoo!, Inc.*, 570

F.3d 1096, 1102 (9th Cir. 2009) ("a publisher reviews material submitted for publication, *perhaps edits it for style or technical fluency,* and then decides whether to publish it") (emphases added).

Plaintiff's effort to hold Twitter liable for such generalized editorial activity on third-party content is prohibited by Section 230. The fact that an algorithm was involved makes no difference. *See, e.g., Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1098 (9th Cir. 2019) ("It is true that Ultimate Software used features and functions, including algorithms, to analyze user posts on Experience Project and recommended other user groups…. Plaintiff, however, cannot plead around Section 230 immunity by framing these website features as content."); *Force v. Facebook, Inc.*, 934 F.3d 53, 62, 66-67 (2d Cir. 2019) (rejecting argument that "Facebook's use of algorithms is outside the scope of publishing because the algorithms automate Facebook's editorial decision-making" and explaining that "[w]e disagree with plaintiffs' contention that Facebook's use of algorithms renders it a non-publisher"); *Marshall's Locksmith Serv., Inc. v. Google, LLC*, 925 F.3d 1263, 1271 (D.C. Cir. 2019) (Google's use of "automated algorithms to convert third-party indicia of location into pictorial form" was protected by Section 230). Indeed, "so long as a third party willingly provides the essential published content, the interactive service provider receives full immunity regardless of the specific editing or selection process." *Carafano v. Metrosplash.com., Inc.*, 339 F.3d 1119, 1124 (9th Cir. 2003).

*O'Kroley v. Fastcase, Inc.*, 831 F.3d 352 (6th Cir. 2016) is directly on point. That case arose from a search result snippet generated by Google's search engine: "Texas Advance Sheet," an entry read, followed by the words "indecency with a child in Trial Court Cause N … Colin O'Kroley v Pringle." *Id.* at 354. But O'Kroley was never involved in a child-indecency case. Instead, his case, *O'Kroley v. Pringle*, was listed immediately after an unrelated child-indecency case, on the Texas Advance Sheet, a service that summarizes Texas judicial opinions. A reader seeing only Google's search result "would see only the name of his case and the description

of the other case separated by an ellipsis." *Id*. Claiming that this snippet was defamatory and invaded his privacy, Plaintiff sued Google. The Sixth Circuit held that his claims were barred by Section 230. *Id*.

As the Court explained, what mattered was that the underlying content (the Texas Advance Sheet) was provided by a third party. The fact that Google used an algorithm to effectively "crop" that underlying webpage in a way that the plaintiff claimed were misleading and defamatory did not change the result. Those were just "automated editorial acts" that "come within 'a publisher's traditional editorial functions'—'deciding whether to publish, withdraw, postpone or alter content'" and do not deprive Google of immunity. *Id*. at 355 (citation omitted). The Court went on:

> Nor did Google's alterations materially contribute to the alleged unlawfulness of the content. O'Kroley points to the ellipsis that separated indecency with a child from his name and case information. Doesn't that mean, he asks, that Google is responsible for what makes the displayed content allegedly unlawful—linking him to a crime he didn't commit? No, it does not. For Google did not add the ellipsis to the text. It was already in the Texas Advance Sheet's case preview. Because the Act immunizes Google for reproducing this third-party content, the district court correctly granted Google's motion to dismiss.

*Id*. at 355 (internal quotation marks and citations omitted).

This case is very similar. The relevant content (the photographs here; the Texas Advance Sheet in *O'Kroley*) all came from third parties. And just like Google, Twitter allegedly used an algorithm to generate a preview version of that content (a cropped image here; a search result snippet there). But, as with Google's snippet, Twitter's algorithm did not add new content or anything that was not already in the underlying photographs—it simply cropped that third-party content in ways Plaintiff alleges to be unflattering. As in *O'Kroley*, Section 230 immunizes Twitter for performing these "automated editorial acts" in regard to third-party content.

## IV.    CONCLUSION

For these reasons, the claims against Defendants Twitter International, TweetDeck, and Magic Pony should be dismissed, and Plaintiff's claim for false light (Count V) should be dismissed against all Defendants.

Dated:  October 18, 2021                Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI


By: */s/ Victor Jih*_____
                    Victor Jih

Attorney for the Twitter Defendants