BRIAN M. WILLEN (*pro hac vice*)
    bwillen@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the America, 40th Floor
New York, NY 10019-6022
Telephone: (212) 999-5800
Facsimile: (212) 999-5899

VICTOR JIH, State Bar No. 186515
    vjih@wsgr.com
EVE A. ZELINGER, State Bar No. 328862
    ezelinger@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
633 West Fifth Street, Suite 1550
Los Angeles, CA 90071-2027
Telephone: (323) 210-2900
Facsimile: (866) 974-7329

*Attorneys for Defendants Twitter, Inc., Twitter
International Company, TweetDeck, Inc., and
Magic Pony Technology, Inc.*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| GENEVIEVE MORTON,<br><br>             Plaintiff,<br><br>      v.<br><br>TWITTER, INC., et. al,<br><br>             Defendants. | Case No. 2:21-cv-07145-GW-JEMx<br>c/w 2:20-cv-10434-GW-JEM<br><br>**REPLY IN SUPPORT OF THE TWITTER DEFENDANTS' MOTION TO DISMISS**<br><br>Date:      December 30, 2021<br>Time:      8:30 A.M.<br>Crtrm:    9D<br>Judge:    Hon. George H. Wu |

# TABLE OF CONTENTS

**Page**

I.  TWITTER INTERNATIONAL IS NOT SUBJECT TO GENERAL
JURISDICTION IN CALIFORNIA ................................................................ 1

II.  PLAINTIFF CANNOT SAVE HER CLAIMS AGAINST TWITTER'S
SUBSIDIARIES .......................................................................................... 5

III.  PLAINTIFF CANNOT SAVE HER FALSE LIGHT OR RIGHT OF
PUBLICITY CLAIMS ................................................................................. 7

    A.  Plaintiff Has No Viable False Light Claim ........................................ 7

    B.  Plaintiff's Right of Publicity Claim Fails As a Matter of Law .......... 10

    C.  Plaintiff Cannot Evade Section 230 ................................................ 11

CONCLUSION ........................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Aisenson v. Am. Broad. Co.*,
   220 Cal. App. 3d 146 (1990) ........................................................... 8

*AM Trust v. UBS AG*,
   681 F. App'x 587 (9th Cir. 2017) .................................................... 2

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ......................................................................... 6

*Barnes v. Yahoo!, Inc.*,
   570 F.3d 1096 (9th Cir. 2009) ........................................... 11, 12, 14

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ......................................................................... 5

*Bristol-Myers Squibb Co. v. Super. Ct.*,
   1 Cal. 5th 783 (2016) ....................................................................... 3

*Burnham v. Super. Ct.*,
   495 U.S. 604 (1990) ......................................................................... 2

*Carafano v. Metrosplash.com, Inc.*,
   339 F.3d 1119 (9th Cir. 2003) ....................................................... 12

*Carter v. Liang*,
   No. CV 20-10025-JAK (PLA), 2020 U.S. Dist. LEXIS 252883
   (C.D. Cal. Dec. 16, 2020) ................................................................ 5

*Cross v. Facebook, Inc.*,
   14 Cal. App. 5th 190 (2017) .......................................................... 10

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014) ..................................................................... 2, 3

*De Havilland v. FX Networks, LLC*,
   21 Cal. App. 5th 845 (2018) ............................................................ 9

*Dyroff v. Ultimate Software Grp., Inc.*,
934 F.3d 1093 (9th Cir. 2019)........................................................................12

*Fahmy v. Jay-Z*,
No. CV 07-5715 CAS, 2008 U.S. Dist. LEXIS 91375
(C.D. Cal. Oct. 29, 2008) ...........................................................................1, 2

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*,
521 F.3d 1157 (9th Cir. 2008) (en banc)........................................................12

*Force v. Facebook, Inc.*,
934 F.3d 53 (2d Cir. 2019)............................................................................12

*Gerard v. Wells Fargo Bank*, N.A., No. CV 14-03935 MMM (SHx),
2015 U.S. Dist. LEXIS 66167 (C.D. Cal. May 19, 2015) ..................................8

*Gonzalez v. Google LLC*,
2 F.4th 871 (9th Cir. 2021).....................................................................12, 13

*Johnson v. Mitchell*,
No. CIV S-10-1968 GEB GGH PS,
2012 U.S. Dist. LEXIS 65934 (E.D. Cal. May 10, 2012)...................................4

*Johnson v. UBS AG*,
No. 2:20-cv-00357-MCS-JC, 2020 U.S. Dist. LEXIS 221926
(C.D. Cal. Nov. 12, 2020) ..............................................................................2

*Keates v. Koile*,
883 F.3d 1228 (9th Cir. 2018).........................................................................6

*King v. Am. Family Mut. Ins. Co.*,
632 F.3d 570 (9th Cir. 2011)...........................................................................3

*Krueger v. Adlife Mktg. & Commc'ns Co.*,
No. 2:20-cv-07083-VAP-PJWx, 2020 U.S. Dist. LEXIS 233624
(C.D. Cal. Dec. 10, 2020)...............................................................................4

*Marshall's Locksmith Serv., Inc. Google, LLC*,
925 F.3d 1263 (D.C. Cir. 2019) ....................................................................12

*Martinez v. Aero Caribbean*,
764 F.3d 1062 (9th Cir. 2014).................................................................2, 3, 4

*MidCap Funding XVIII Trust v. CSC Logic, Inc.*,
　　No. 2:20-cv-09648-CAS-RAOx, 2021 U.S. Dist. LEXIS 46992
　　(C.D. Cal. Mar. 12, 2021)................................................................. 2, 3

*Morton v. Twitter, Inc.*,
　　No. 2:20-cv-10434-GW-JEM (C.D. Cal. Feb. 19, 2021)......................... 11, 14

*Murphy v. Twitter, Inc.*,
　　60 Cal. App. 5th 12 (2021) ............................................................... 1

*Neilson v. Union Bank of Cal., N.A.*,
　　290 F. Supp. 2d 1101 (C.D. Cal. 2003) ............................................. 5

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
　　591 F.3d 250 (4th Cir. 2009) ........................................................... 12

*O'Kroley v. Fastcase, Inc.*,
　　831 F.3d 352 (6th Cir. 2016) ........................................................... 13

*Paramount Farms, Inc. v. Ventilex B.V.*,
　　No. CV F 08-1027 LJO SKO, 2010 U.S. Dist. LEXIS 110432
　　(E.D. Cal. Oct. 4, 2010) .................................................................. 5

*Parker v. Paypal, Inc.*,
　　No. 16-04786, 2017 WL 3508759 (E.D. Pa. Aug. 16, 2017) ................. 14

*Perfect 10, Inc. v. CCBill LLC*,
　　488 F.3d 1102 (9th Cir. 2007) .......................................................... 14

*Perfect 10, Inc. v. Google, Inc.*,
　　No. CV 04-9484 AHM, 2010 WL 9479060
　　(C.D. Cal. July 30, 2010), *aff'd*, 653 F.3d 976 (9th Cir. 2011)................ 10, 11

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
　　No. C 04-0371 JW, 2004 U.S. Dist. LEXIS 15895
　　(N.D. Cal. Aug. 5, 2004) .................................................................. 11

*Peterson v. Gannett Co.*,
　　No. CV-20-00106-PHX-MTL, 2020 U.S. Dist. LEXIS 70720
　　(D. Ariz. Apr. 22, 2020) .................................................................. 9

*Ramey v. Darkside Prods.*,
   No. 02-730 (GK), 2004 U.S. Dist. LEXIS 10107
   (D.D.C. May 17, 2004) .................................................................. 14

*Ranza v. Nike, Inc.*,
   793 F.3d 1059 (9th Cir. 2015) ................................................... 3, 4

*Resolute Forest Prods., Inc. v. Greenpeace Int'l*,
   No. 17-cv-02824-JST, 2019 U.S. Dist. LEXIS 10263
   (N.D. Cal. Jan. 22, 2019) ......................................................... 9, 10

*Siemer v. Learjet Acquisition Corp.*,
   966 F.2d 179 (5th Cir. 1992) ......................................................... 3

*Walden v. Fiore*,
   571 U.S. 277 (2014) ....................................................................... 4

*Wynn v. Chanos*,
   75 F. Supp. 3d 1228 (N.D. Cal. 2014) ......................................... 9

## STATUTES

47 U.S.C. § 230(e)(2) .................................................................... 14

Plaintiff's Opposition (ECF No. 29, "Opp.") to Twitter's Motion to Dismiss (ECF No. 24, "MTD") offers no viable basis for asserting personal jurisdiction over Twitter International Company ("Twitter International") or for asserting any claims against the Twitter subsidiaries named as Defendants in this case. Nor can Plaintiff save her false light or right of publicity claims, which both fail on their own terms and are barred by Section 230.

## I.   TWITTER INTERNATIONAL IS NOT SUBJECT TO GENERAL JURISDICTION IN CALIFORNIA

Defendants' Motion to Dismiss explained that the facts pleaded in the Complaint create no legally cognizable basis for subjecting Twitter International—a foreign subsidiary of Twitter, Inc. ("Twitter") based in Ireland—to personal jurisdiction in this Court. Twitter International is not "at home" in California, and Plaintiffs identified no specific California-directed activities by Twitter International that bear on the claims asserted in this action. MTD at 7-10. In response, Plaintiff makes three arguments for asserting personal jurisdiction: (1) Twitter International did not contest jurisdiction in a prior (unrelated) case in California; (2) Twitter International was supposedly served through a registered agent in California; and (3) Twitter International conducts "substantial business" in California. Opp. at 9. Each of these arguments fail as a matter of law.

*First*, the fact that Twitter International did not challenge personal jurisdiction in *Murphy v. Twitter, Inc.*, 60 Cal. App. 5th 12 (2021) is immaterial. *Murphy* was entirely unrelated to this case: it arose from Twitter's suspension of the account of a (Canadian) user for violating its policies against hatred directed toward transgender individuals. *Id*. Whatever Twitter International's reasons were for not contesting jurisdiction in *Murphy*, that has no bearing here. It is black letter law that a party's consent to jurisdiction in one case is not (and cannot be taken as) consent to jurisdiction in a later case. *See, e.g.*, *Fahmy v. Jay-Z*, No. CV 07-5715 CAS (PJWx),

1   2008 U.S. Dist. LEXIS 91375, at *10-11 (C.D. Cal. Oct. 29, 2008) (rejecting
2   arguments that defendant waived personal jurisdiction by consenting to the same
3   court's exercise of personal jurisdiction in another matter); *Johnson v. UBS AG*, No.
4   2:20-cv-00357-MCS-JC, 2020 U.S. Dist. LEXIS 221926, at *7 (C.D. Cal. Nov. 12,
5   2020) ("the fact that UBS failed to challenge jurisdiction in other cases does not
6   satisfy Plaintiffs' burden here, nor does it amount to UBS's waiver of general
7   personal jurisdiction defenses in this District."), *aff'd*, 860 F. App'x 531 (9th Cir.
8   2021). Unsurprisingly, therefore, Plaintiff cites no authority that even purports to
9   support her argument.

10      ***Second***, while Twitter International disputes that it was properly served—and
11   does not in fact maintain an agent to receive service of process in California (*see*
12   Supplemental Shin Decl. ¶¶ 3-4)—even assuming otherwise, binding precedent
13   makes clear that in-state personal service on a corporation's officers or agents does
14   ***not*** create personal jurisdiction. The Ninth Circuit resolved that question in *Martinez*
15   *v. Aero Caribbean*, 764 F.3d 1062 (9th Cir. 2014). The issue there was "whether,
16   under *Burnham v. Superior Court*, 495 U.S. 604 (1990) . . . , service of process on a
17   corporation's officer within the forum state creates general personal jurisdiction over
18   the corporation." *Martinez*, 764 F.3d at 1064. The Ninth Circuit expressly held that
19   "*Burnham* does not apply to corporations" and thus that a "court may exercise general
20   personal jurisdiction over a corporation ***only*** when its contacts 'render it essentially
21   at home' in the state.'" *Id*. (emphasis added) (quoting *Daimler AG v. Bauman*, 571
22   U.S. 117, 122 (2014)); *see also id*. at 1071 ("*Burnham* does not authorize tag
23   jurisdiction over corporations"); *AM Trust v. UBS AG*, 681 F. App'x 587, 589 (9th
24   Cir. 2017) ("Nor does UBS's acceptance of service of process in California in this
25   case amount to consent to personal jurisdiction in that state."); *MidCap Funding*
26   *XVIII Trust v. CSC Logic, Inc.*, No. 2:20-cv-09648-CAS-RAOx, 2021 U.S. Dist.
27   LEXIS 46992, at *15 (C.D. Cal. Mar. 12, 2021) ("even assuming *arguendo* that

28

1   defendant's agent accepted service of process in California, that is insufficient to

2   establish personal jurisdiction"); *accord Siemer v. Learjet Acquisition Corp*., 966

3   F.2d 179, 183 (5th Cir. 1992) ("To assert, as plaintiffs do, that mere service on a

4   corporate agent automatically confers general jurisdiction displays a fundamental

5   misconception of corporate jurisdictional principles.").[1]

6   ***Third***, Plaintiff's assertion that Twitter International is "at home" in California

7   based on her allegations that Twitter International "conducts substantial business" in

8   this state is equally contrary to settled law. The Supreme Court expressly "rejected

9   the argument that general jurisdiction is appropriate whenever a corporation 'engages

10   in a substantial, continuous, and systematic course of business' in a state." *Martinez*,

11   764 F.3d at 1070 (quoting *Daimler*, 571 U.S. at 137-38). Moreover, insofar as

12   Plaintiff seeks to use Twitter's presence in California to impute jurisdictional

13   contacts to its subsidiary (Opp. 14), that too is improper. As the Ninth Circuit has

14   explained: "The existence of a parent-subsidiary relationship is insufficient, on its

15   own, to justify imputing one entity's contacts with a forum state to another for the

16   purpose of establishing personal jurisdiction." *Ranza v. Nike, Inc*., 793 F.3d 1059,

17   1070 (9th Cir. 2015). Nor can such contacts be imputed through an "agency" test (*id*.

18   at 1070-71)—and Plaintiff has not even tried to argue that Twitter International is an

19

20   ‎    [1] It is equally well settled that "a corporation's designation of an agent for in-state
    service of process does not create general jurisdiction over the corporation." *Martinez*,
21   764 F.3d at 1069 (citing *King v. Am. Family Mut. Ins. Co.*, 632 F.3d 570, 579 (9th
22   Cir. 2011) (defendant's Montana contracts, which included the appointment of an in-
    state agent for service of process, "hardly approximate physical presence" and do not
23   render the company at "home")); *MidCap Funding*, 2021 U.S. Dist. LEXIS 46992, at
24   *14-15 ("the California Supreme Court has been clear that the 'designation of an agent
    for service of process and qualification to do business in California' do not require
25   corporations to consent to general jurisdiction and, 'alone[,] are insufficient to permit
26   general jurisdiction.'" (alteration in original) (quoting *Bristol-Myers Squibb Co. v.
    Super. Ct.*, 1 Cal. 5th 783, 798, (2016), *rev'd on other grounds*, *Bristol-Myers Squibb
27   Co. v. Super. Ct.*, 137 S. Ct. 1773 (2017))).

28

"alter ego" of Twitter. (*id.* at 1071-73). Based on the allegations in the Complaint, therefore, it is clear that Twitter International is not subject to general jurisdiction.

Finally, insofar as Plaintiff points to a handful of conclusory and general allegations—such as that "Twitter ***and/or*** Twitter International offered its Services to the Doe Defendant Number 2" (Compl. ¶ 11)—to argue for specific jurisdiction (Opp. at 14), this falls equally short. As Twitter has explained (MTD at 9-10), Plaintiff does not allege a single fact to suggest that Twitter International's "suit-related conduct" created "a substantial connection with" California. *Walden v. Fiore*, 571 U.S. 277, 284 (2014). To the contrary, Plaintiff's own allegations undermine any such suggestion. She alleged that Twitter International provides service to users ***outside*** the United States, but that the Doe Defendant operated a website hosted "within the United States." Compl. ¶¶ 7, 11. On top of that, the undisputed record makes clear that Twitter International was not involved in processing the copyright notices at issue here or removing the allegedly infringing material from Twitter. ECF No. 24-2 (Shin Decl. ¶ 4). There is, in short, simply no basis for asserting personal jurisdiction over Twitter International.[2]

---

[2] Plaintiff makes a passing request for jurisdictional discovery (Opp. at 2, 11), but she makes no showing whatsoever of the kind of discovery she might wish to conduct or what she thinks such discovery could produce. It is well settled that the refusal to grant jurisdictional discovery "is not an abuse of discretion when it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction." *Martinez*, 764 F.3d at 1070; *accord Krueger v. Adlife Mktg. & Commc'ns Co.*, No. 2:20-cv-07083-VAP-PJWx, 2020 U.S. Dist. LEXIS 233624, at *13 (C.D. Cal. Dec. 10, 2020) (finding no basis for jurisdictional discovery); *Johnson v. Mitchell*, No. CIV S-10-1968 GEB GGH PS, 2012 U.S. Dist. LEXIS 65934, at *19 (E.D. Cal. May 10, 2012) (explaining that "limited discovery should not be permitted to conduct a 'fishing expedition.'"). That is exactly the situation here.

## II.   PLAINTIFF CANNOT SAVE HER CLAIMS AGAINST TWITTER'S SUBSIDIARIES

As explained in Defendants' motion, the Complaint offers no non-conclusory allegations against Twitter International, TweetDeck, Inc. ("TweetDeck"), and Magic Pony Technology, Inc. ("Magic Pony") that, taken as true, could state viable claims against them. MTD at 10-13. The Opposition only confirms this problem.

Plaintiff vaguely asserts that these entities are wholly owned subsidiaries of Twitter, that there is a "close relationship" between them, and that they acted as "agents" of Twitter. Opp. 16-17. That is not nearly enough. *See, e.g.*, *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1116 (C.D. Cal. 2003) (explaining that "a parent company is presumed to have an existence separate from its subsidiaries" and that "[c]onclusory allegations of 'alter ego' status are insufficient to state a claim"); *Paramount Farms, Inc. v. Ventilex B.V.*, No. CV F 08-1027 LJO SKO, 2010 U.S. Dist. LEXIS 110432, at *16 (E.D. Cal. Oct. 4, 2010) ("Although the proposed FAC attempts to state a conclusory allegation of a principal-agency relationship, it lacks necessary facts to support such relationship. The proposed FAC's mere allegation of a parent-subsidiary relationship is insufficient."). Plaintiff cannot rely on group pleading or vague allegations of corporate connections: instead, "to state a claim against an individual defendant, plaintiff must allege sufficient factual allegations ***against that defendant*** to nudge each claim plaintiff wishes to raise 'across the line from conceivable to plausible.'" *Carter v. Liang*, No. CV 20-10025-JAK (PLA), 2020 U.S. Dist. LEXIS 252883, at *11-12 (C.D. Cal. Dec. 16, 2020) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). But neither the Complaint nor the Opposition offers even a single fact that suggests that Twitter International, Tweet Deck, or Magic Pony took any actions that amount to copyright infringement, a violation of the right of publicity, or false light.

***Twitter International***. In trying to explain its claims against Twitter International, Plaintiff says that ***if*** a user outside the United States contributed to the infringement, Twitter International would have been responsible for terminating that users' account. Opp. at 14-15. But the Complaint does not allege that any such users are actually involved in this case and, as noted, her allegations indicate otherwise. Plaintiff cannot state a claim with a counterfactual hypothetical. Plaintiff fares no better in pointing to the Complaint's wholly conclusory allegations that "Twitter, Inc. and its subsidiaries acted willfully in encouraging users to upload photographs" and in ignoring the infringement." *Id.* at 15; Compl. ¶¶ 79-80. These allegations are the paradigm of the "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," that "do not suffice" to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *accord Keates v. Koile*, 883 F.3d 1228, 1243 (9th Cir. 2018) (courts are not "bound to accept as true a legal conclusion couched as a factual allegation or 'an unadorned, the-defendant-unlawfully-harmed-me accusation'").

***TweetDeck***. The only references to TweetDeck in the Opposition are entirely generic: (1) an explanation that TweetDeck is an application that "enables entire teams of people to 'share access' to an account" (Opp. at 9, 17-18); and (2) the assertion that the "Twitter Defendants" provided "the TweetDeck Interface, a social media dashboard application for management of multiple Twitter accounts shared by multiple people with multiple IP addresses all over the world" (*id.* at 21). These recitals do not state a cause of action. There is obviously nothing wrongful about a tool that allows multiple users to share a single Twitter account, and Plaintiff does not even try to explain (much less allege) what TweetDeck has to do with any alleged copyright infringement, right of publicity violations, or false light claims asserted here. Indeed, ***Plaintiff does not allege that the Doe Defendant (the @city_tits user) ever used TweetDeck for any purpose***—and certainly not for an illegal purpose. Nor

is there any purported connection between TweetDeck and the injuries Plaintiff claims to have suffered. The Opposition thus only underscores that Plaintiff has no viable claim against TweetDeck.

*Magic Pony.* Plaintiff's sole mention of Magic Pony in the Opposition is the assertion that "the algorithm developed by Magic Pony" was used to crop "Plaintiff's image." *Id.* But, as Defendants previously explained, this bare assertion does not give rise to a viable cause of action against Magic Pony. MTD at 12-13. There are no factual allegations that Magic Pony played any actual role in the supposed use of the cropping algorithm in connection with Tweets at issue, much less that Magic Pony itself either violated (or knowingly contributed to or directly financially benefited from the infringement of) Plaintiffs' copyright or made a statement with actual malice that put Plaintiff in a false light. Plaintiff offers no response to these points, other than just to repeat the Complaint's threadbare and insufficient allegations. That confirms that dismissal is appropriate—and that Plaintiff has no further allegations that could possibly state a claim against Magic Pony.

## III.   PLAINTIFF CANNOT SAVE HER FALSE LIGHT OR RIGHT OF PUBLICITY CLAIMS

### A.   Plaintiff Has No Viable False Light Claim

Defendants' motion explained that Plaintiff failed to allege multiple elements of a false light claim based on the purported cropping of her photographs by Twitter's automated algorithm: (1) Plaintiff has not plausibly alleged that such cropping is a statement of fact at all—much less a false assertion; (2) Plaintiff did not even try to allege actual malice. *Id.* at 13-17.

Plaintiff largely ignores the first point, and the little that she does say confirms the insurmountable problem with her claim. Plaintiff does not even try to explain how the use of an automated algorithm that crops millions of photographs across a service like Twitter amounts to an ***assertion of fact by Twitter*** about the individuals who

appear in those photographs. Plaintiff certainly does not cite a single case in which a false light claim has been allowed to proceed on anything like this theory. And she does not respond at all to the cases discussed in the Motion to Dismiss. *Cf. Gerard v. Wells Fargo Bank*, N.A., No. CV 14-03935 MMM (SHx), 2015 U.S. Dist. LEXIS 66167, at \*39-40 (C.D. Cal. May 19, 2015) (failure to substantively respond to arguments in an opposition warrants dismissal). Without a factual statement by any of the Twitter Defendants, there can be no false light claim against them.

While the Court could stop there, Plaintiff also does nothing to explain what was supposedly false about how her images were cropped. The only reference Plaintiff makes to this point is to confirm that the Doe Defendant (@city_tits) was the one who "falsely presented" Plaintiffs in the underlying Tweet as "the authorized spokesmodel for a pornographic enterprise." Opp. at 19. That underscores the basic problem: insofar as Plaintiff claims that she was falsely presented as being involved in pornography, that was a function of the underlying user's Tweet. Plaintiff then says, without explanation, that Twitter "contributed to this falsehood by cropping the photograph with its sexist saliency algorithm to display a cropped version that altered the context and character of the image." *Id*. But, as we have explained (MTD at 14-16), this conclusory assertion does not explain how the mere cropping of the image, by itself, transformed its meaning into something that put Plaintiff in a false light. Plaintiff does not suggest that the algorithm added anything to the photographs. Nor does she explain (much less show) the supposed difference between the cropped and uncropped versions. She makes no effort to distinguish this case from *Aisenson v. American Broadcasting Co.*, 220 Cal. App. 3d 146 (1990), which rejected an analogous claim. MTD at 14-15. And Plaintiff ignores the fact that the materials cited in her own Complaint refute that the algorithm was actually sexist or favored women's bodies over their faces. MTD at 15 n.4. Simply put, there is no plausible basis for the Court to conclude that, even if the Twitter Defendants somehow made a statement

through the alleged cropping, that statement itself communicated something false about Plaintiff.

Finally, Plaintiff cannot avoid her failure to establish actual malice. MTD at 16-17. Plaintiff does not dispute that actual malice applies here, but argues that she has provided "evidence of negligence, motive, and intent." Opp. 18. Of course, negligence is not enough, *see De Havilland v. FX Networks, LLC*, 21 Cal. App. 5th 845, 870 (2018), and what little "evidence" Plaintiff identifies falls far short of establishing that the Twitter Defendants "intended to convey the defamatory impression" (*id*.). Indeed, the Complaint itself does not so much as ***allege*** malice (or anything about the Twitter Defendants' state of mind). Compl. ¶¶ 86-87. And the Opposition does not fill the void. Plaintiff focuses largely on the conduct of the third-party user who posted the Tweets, rather than on anything Twitter did. Opp. 18-19. Plaintiff's assertions about Twitter are simply that it (1) "offered its services" to that user and received compensation, and (2) applied its general cropping algorithm to display a cropped version of the photographs. *Id*. Even taking these assertions as true, they fall short of actual malice. They say nothing about Twitter's mental state, much less that it intended to cast Plaintiff in a false light. At most, these are the kinds of "formulaic recitations" of "ill-will and knowledge of falsehood" that "fall short" of the "'demanding burden' for pleading actual malice." *Peterson v. Gannett Co*., No. CV-20-00106-PHX-MTL, 2020 U.S. Dist. LEXIS 70720, at *20-21 (D. Ariz. Apr. 22, 2020) (citation omitted) (dismissing complaint for failing to plausibly allege malice); *accord Wynn v. Chanos*, 75 F. Supp. 3d 1228, 1238-40 (N.D. Cal. 2014) (same, where Plaintiff failed to make "any specific allegations that would support a finding that [Defendants] harbored serious subjective doubts as to the validity of [their] assertions"); *Resolute Forest Prods., Inc. v. Greenpeace Int'l*, No. 17-cv-02824-JST, 2019 U.S. Dist. LEXIS 10263, at *21 (N.D. Cal. Jan. 22, 2019) ("it is

1  proper to dismiss a complaint when the Court concludes the plaintiff fails to plead

2  actual malice as a matter of law").[3] For this reason as well, Plaintiff's claim fails.

3              **B.      Plaintiff's Right of Publicity Claim Fails As a Matter of Law**

4              Plaintiff argues in her Opposition that she has stated a claim "against all

5  Defendants" for a violation of California's statutory right of publicity. Opp. at 19. But

6  this contradicts her own Complaint, which expressly states that the right of publicity

7  claim (Count IV) is asserted only "against Doe Defendant 1 @city_tits." Compl. at

8  14. Beyond being procedurally improper, Plaintiff's belated effort to assert this claim

9  against the Twitter Defendants fails as a matter of law.

10             A right of publicity claim requires a showing that "require[s] that the defendant

11 actually use the plaintiff's likeness." *Cross v. Facebook, Inc.*, 14 Cal. App. 5th 190,

12 210 (2017) (rejecting right of publicity claim against Facebook for publishing content

13 created by third parties because Plaintiff "has not, and cannot, offer any evidence that

14 Facebook used his name or likeness in any way"). Here, however, Plaintiff does not

15 suggest that the Twitter Defendants themselves used Plaintiff's name or likeness for

16 a commercial purpose. Instead, she asserts that "Doe Defendant #2 [i.e., @city_tits]

17 used Ms. Morton's name, photograph and likeness" in the Tweets at issue. Opp. at 20.

18 Plaintiff seeks to hold Twitter "vicariously liable" for the alleged violation, that is, for

19 allegedly failing to remove the Tweets at issue and by allegedly providing the third-

20 party @city_tits user with "the means to infringe." *Id*. at 20-21.

21             That theory does not work. In addition to *Cross v. Facebook, Inc*., 14 Cal. App.

22 5th 190, 210 (2017), *Perfect 10, Inc. v. Google, Inc*., No. CV 04-9484 AHM (SHx),

23 2010 WL 9479060, at *13 (C.D. Cal. July 30, 2010), *aff'd*, 653 F.3d 976 (9th Cir.

---

25             [3] Moreover, Plaintiff "must allege that ***each defendant*** had actual malice when it
26 published, or had responsibility for the publication of, a defamatory statement."
   *Resolute Forest*, 2019 U.S. Dist. LEXIS 10263, at *22 (emphasis added). As
27 discussed above, Plaintiff has not pointed to anything that could remotely establish
   actual malice by Twitter International, Tweet Deck, or Magic Pony.

28

2011) is directly on point. The plaintiff there asserted a right of publicity claim against Google based on content posted by third parties on its Blogger service. Explaining that "'[c]ontributing' to someone's violation of something is not the same as actually 'violating' it," the Court rejected the claim, because the plaintiff "has not shown that Google is, in fact, inappropriately using the models' likenesses." *Id*. So too here, Plaintiff makes no plausible allegation of any commercial use of her name or likeness by the Twitter Defendants themselves. Merely hosting, facilitating, or failing to remove someone else's misuse of Plaintiff's identity does not give rise to a viable right of publicity claim. *Accord Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, No. C 04-0371 JW, 2004 U.S. Dist. LEXIS 15895, at *19-20 (N.D. Cal. Aug. 5, 2004) (dismissing right of publicity claim and explaining that the "fact that Plaintiff may have notified Defendants of illegal conduct is 'not sufficient to establish aiding and abetting liability'" (citation omitted)).

### C.   Plaintiff Cannot Evade Section 230

While the Court need go no further to dismiss Plaintiff's false light and right of publicity claims, Plaintiff also cannot evade the extensive legal authority making clear that those claims are also barred by Section 230.

***Right of Publicity.*** Plaintiff does not even try to explain how any right of publicity claim against the Twitter Defendants could escape Section 230. Nor could she. In its prior Order in this case, the Court applied Section 230 to an identical claim. *Morton v. Twitter, Inc.*, No. 2:20-cv-10434-GW-JEM, slip op. at 6 (C.D. Cal. Feb. 19, 2021) ("*Morton I*"). That ruling controls here. Indeed, Plaintiff's effort to hold Twitter liable for publishing or failing to remove third-party content is exactly what Section 230 forbids. *See, e.g.*, *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1103 (9th Cir. 2009) ("[S]ection 230 protects from liability 'any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online.'" (quoting

1   *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157,

2   1170-71 (9th Cir. 2008) (en banc))).

3       ***False Light.*** As to the false light claim, Plaintiff claims that Section 230 does

4   not apply because the claim is based on Twitter's use of an algorithm to crop third-

5   party content. Opp. at 21-24. But she fails to meaningfully engage with, much less

6   distinguish, the extensive legal authority discussed in Twitter's opening brief. MTD

7   at 17-19. Plaintiff acknowledges that it was a third party, not the Twitter Defendants,

8   who created and posted the photographs at issue. Opp. at 23. And she does not cite a

9   single case that supports withholding Section 230 protection for an online service

10   provider's application of the kind of "neutral tool" at issue here to edit or facilitate

11   the display of user content. Plaintiff also ignores the Ninth Circuit's rulings in *Barnes*,

12   570 F.3d 1096, *Dyroff v. Ultimate Software Group, Inc.*, 934 F.3d 1093 (9th Cir.

13   2019) and *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119 (9th Cir. 2003)—as well

14   as the on-point decisions in *Marshall's Locksmith Serv., Inc. Google, LLC*, 925 F.3d

15   1263 (D.C. Cir. 2019) and *Force v. Facebook, Inc.*, 934 F.3d 53 (2d Cir. 2019)—

16   which make clear that "editing" user content is a traditional publisher function and

17   that the use of automated algorithmic tools to perform such functions is fully protected

18   by Section 230. MTD at 18; *accord Nemet Chevrolet, Ltd. v. Consumeraffairs.com,

19   Inc.*, 591 F.3d 250, 258 (4th Cir. 2009) ("§ 230 forbids the imposition of publisher

20   liability on a service provider for the exercise of its editorial and self-regulatory

21   functions" (citation omitted)).

22       Plaintiff claims that by asserting that the algorithm is a neutral tool, Twitter

23   seeks to convert this motion into a motion for summary judgment. Opp. at 22. Not so.

24   It is well settled that Section 230 immunity can—and should—be resolved on a

25   motion to dismiss where "the allegations in the complaint suffice to establish th[e]

26   defense]." *Gonzalez v. Google LLC*, 2 F.4th 871, 890 n.8 (9th Cir. 2021). In *Gonzalez*,

27   the Ninth Circuit affirmed dismissal of claims that were based, in part, on Google's

28

alleged use of algorithms to recommend ISIS content. *Id*. at 892-96. The court reiterated its prior holdings that "a website is not transformed into a content creator or developer by virtue of supplying 'neutral tools' that deliver content in response to user inputs." *Id*. at 893; *accord id*. at 896 ("a website's use of content-neutral algorithms, without more, does not expose it to liability for content posted by a third-party"). In explaining why Google's algorithms were neutral in this way, the Ninth Circuit emphasized what the plaintiff had *failed* to plead: "The TAC does not allege that Google's algorithms prompted ISIS to post unlawful content. Nor does the TAC allege that Google's algorithms treated ISIS-created content differently than any other third-party created content." *Id*. at 896.

So too here. Considerable information about Twitter's cropping algorithm is provided by the Complaint and the materials it references. Compl. ¶¶ 9, 28-29 & n.2 (blog post explaining operation of tool), 31 & nn.3-4. But Plaintiff does not (and could not) allege that Twitter's algorithm was designed to encourage or favor illegal content or that it treated the images at issue here differently from other third party content. Based on the materials before the Court, this general-use algorithm is a clear example of a neutral tool that does not turn Twitter into a content developer. As in *Gonzalez*, the allegation that the algorithm may in some cases lead to undesirable results does not change that analysis. *See* 2 F.4th at 894 ("Though we accept as true the TAC's allegation that Google's algorithms recommend ISIS content to users, the algorithms do not treat ISIS-created content differently than any other third-party created content, and thus are entitled to § 230 immunity.").

That conclusion is underscored by *O'Kroley v. Fastcase, Inc.*, 831 F.3d 352 (6th Cir. 2016), which Plaintiff fails to meaningfully distinguish. Yes, *O'Kroley* addressed a different cropping tool (which generated snippets of website text for search results), but its fundamental insights apply fully to this case: automated cropping comes within a "publisher's traditional editorial functions" and is protected

by Section 230—at least where it does not result in the addition of new material but instead reproduces, in an edited form, the underlying third-party material. *Id*. at 355. And just as Google was immunized for displaying an allegedly misleading snippet of third-party content, Twitter is protected for displaying an allegedly misleading cropped version of Plaintiff's image.

Finally, Plaintiff says this case is different because the Twitter user provided the content at issue "without authorization." Opp. at 23 (emphasis omitted) ("Twitter, Inc. never had the right to display or distribute Plaintiff's copyrighted works" (emphasis omitted)). That is irrelevant. Section 230 protection does not depend on whether the underlying third-party content is authorized to be posted on the service provider's platform. *Barnes* makes that clear: that case arose from profiles that "contained nude photographs of [plaintiff] and her boyfriend, taken without her knowledge, and some kind of open solicitation, whether express or implied is unclear, to engage in sexual intercourse." 570 F.3d at 1098. The plaintiff "did not authorize her now former boyfriend to post the profiles" (*id*.), yet the Ninth Circuit held that Yahoo was protected by Section 230 for failing to remove them (*id*. at 1102-03). *Accord Morton I*, at 6 (citing *Parker v. Paypal, Inc*., No. 16-04786, 2017 WL 3508759, at *7 (E.D. Pa. Aug. 16, 2017) for the proposition that "Section 230 barred unjust enrichment claim against Amazon.com premised on the sale of unauthorized copies of plaintiff's book on the Kindle store"); *Ramey v. Darkside Prods*., No. 02-730 (GK), 2004 U.S. Dist. LEXIS 10107 (D.D.C. May 17, 2004) (applying Section 230 to bar claims based on online publication of advertisements for adult entertainment services that featured plaintiff's intimate images that had been taken and used without her authorization).[4]

---

[4] Of course, Section 230 does not apply to Plaintiff's actual copyright claims. 47 U.S.C. § 230(e)(2). Twitter has not argued otherwise. But the statute's "intellectual
(continued...)

1    In short, while the Court need not reach Section 230, under established law, the

2    statute bars Plaintiff's claims, which are based on Twitter's alleged display, failure to

3    remove, and automated cropping of third-party content.

4                                    **CONCLUSION**

5    For these reasons, the claims against Twitter International, TweetDeck, and

6    Magic Pony should be dismissed, and Plaintiff's claim for false light and right of

7    publicity should be dismissed against all Defendants.

8

9    Dated:  December 10, 2021          WILSON SONSINI GOODRICH & ROSATI
                                        Professional Corporation
10

11                                     By:  _____/s/Victor Jih_____

12                                              Victor Jih

13                                     *Attorneys for the Twitter Defendants*

14

15

16

17

18

19

20

21

22

23    _____

24    property" exception does ***not*** apply to state law claims, including right of publicity
      and false light claims. *See Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118-19
25    (9th Cir. 2007) (applying Section 230 to reject right of publicity claim and holding
      that the intellectual property exception applies only to federal claims); *Morton I* at 6
26    (dismissing right of publicity claim). And, as discussed, the fact that such claims
      (necessarily) arise from content that users are not authorized to display makes no
27    difference.

28