UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-7145-GW-JEMx | Date | January 3, 2022 |
|---|---|---|---|
| Title | *Genevieve Morton v. Twitter, Inc., et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | Terri A. Hourigan | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: | |
| Jennifer Holliday | Brian M. Willen | |

**PROCEEDINGS:** **TELEPHONIC HEARING ON TWITTER DEFENDANTS' MOTION TO DISMISS [24]**

The Court's Tentative Ruling is circulated and attached hereto. Court hears oral argument. Based on the Tentative, and for reasons stated on the record, Defendants' Motion is granted with leave to amend. Plaintiff will have until January 17, 2022 to amend her complaint. Statutory time for the Defendant to respond.

|  | : | 11 |
|---|---|---|
|  | Initials of Preparer | JG |

<u>*Genevieve Morton v. Twitter, Inc. et al*</u>; Case No. 2:21-cv-07145-GW-(JEMx)
<u>*Genevieve Morton v. Twitter, Inc. et al*</u>; Case No. 2:20-cv-10434-GW-(JEMx)
Tentative Ruling on Defendants' Motion to Dismiss

I.   **Background**

Plaintiff Genevieve Morton brought this copyright infringement and privacy action against Defendants Twitter, Inc.; Magic Pony Technology, Inc; TweetDeck, Inc.; and Twitter International Company ("TIC") after she discovered unauthorized, nude photographs of herself on the Twitter platform.  *See* Complaint ("Compl.") ¶¶ 13-47, ECF No. 1.  This is the second action brought by Plaintiff against Twitter and related entities concerning the unauthorized posting of Plaintiff's photos on Twitter by third-party users.  *See Genevieve Morton v. Twitter, Inc. et al. ("Morton I")*, Case No. 2:20-cv-10434-GW-(JEMx).

Before the Court is Defendants' motion to dismiss.  *See* Defendants' Motion to Dismiss ("Mot."), ECF No. 24.  There was some initial confusion over which docket the parties were to file future submissions, resulting in delays in filing the Opposition, but Plaintiff ultimately filed her substantive Opposition ("Opp."), ECF No. 29.  Defendants have filed a Reply, ECF No. 30.

A.   <u>Factual Background</u>

Plaintiff Genevieve Morton is an internationally recognizable model whose name and likeness have substantial value.  *See* Compl. ¶ 14.  Morton's business involves creating, commissioning, selling, and/or licensing copyrighted collections of copyrighted photographs.  Morton has maintained a verified account on the Twitter platform since 2009 and has amassed over 80,000 followers.  *Id.* ¶ 15.

In June 2020, a third-party user on the Twitter platform, Doe Defendant #2 @city_tits (the "Doe Tweeter"), posted an unauthorized image of Morton, entitled "Love on the Rocks," to its Twitter feed.  *Id.* ¶¶ 11, 13, 20-21.  In September 10, 2020, the Doe Tweeter posted another unauthorized image of Morton, entitled "Artists Collection 16," to its Twitter feed.  *Id.* ¶¶ 13, 23-24.  Morton created and owns all rights to both images and registered them with the U.S. Copyright Office.  *Id.* ¶ 13.  The unauthorized images were able to avoid detection from Twitter's automated copyright enforcement tools because the Doe Tweeter "flipped" the images.  *Id.* ¶ 25.  As soon as she discovered the infringement, Morton submitted DMCA Notice and Takedown requests for the unauthorized images. *Id.* ¶¶ 22, 24.  Although Morton submitted her takedown requests on July 23, 2020 and September 10, 2020, Twitter did not remove the

infringing images until October 19, 2020 and October 28, 2020. *Id.* ¶¶ 32-35. The Tweets featuring the unauthorized images were able to obtain 55 and 12 likes indicating the unauthorized images were displayed to at least 67 unique users. *Id.* ¶ 34.

Morton accuses Twitter of employing an "artificially intelligent saliency algorithm" that crops and alters the images posted on Twitter. *Id.* ¶¶ 28-29. Morton alleges that Twitter uses the saliency algorithm to crop and alter images to create unauthorized derivative works that are displayed on the Twitter platform. Morton asserts that the saliency algorithm was designed and created by male engineers at Defendants Twitter and Magic Pony Technology. *Id.* ¶ 31. Morton asserts that the algorithm was "later determined to be biased, resulting in sexist and racist crops, favoring white women and female body parts." *Id.*

## II.     Legal Standard

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint may be dismissed for failure to state a claim for one of two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

The court must construe the complaint in the light most favorable to the plaintiff, by accepting all allegations of material fact as true, and drawing all reasonable inferences from well-pleaded factual allegations in favor of the plaintiff. *Gompper v. VISX, Inc.*, 298 F.3d 893, 896 (9th Cir. 2002). The court is not required to accept as true legal conclusions couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion, the plaintiff must provide grounds demonstrating its entitlement to relief. *Twombly*, 550 U.S. at 555. Under the Supreme Court's decisions in *Twombly* and *Iqbal*, this requires that the complaint contain "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

## III.    Discussion

Defendants Magic Pony Technology, Inc; TweetDeck, Inc.; and TIC move to dismiss all causes of action against them for failure to state a claim. *See* Mot. at 10-13. TIC also moves to dismiss all claims against it for lack of personal jurisdiction. *See id.* at 7-10. Moreover, Defendants assert that all false light causes of action must be dismissed because they fail to state

a claim and/or are barred by Section 230 of the Communications Decency Act ("CDA"), 47 U.S.C. § 230. *See id.* at 13-20. Plaintiff Morton asserts that the Court has personal jurisdiction over TIC because TIC previously consented to jurisdiction in California and is "at home" in California. *See* Opp. at 12-15. Morton further asserts that she has properly pled a claim against all the Twitter Defendants, including the claims for false light and for right of publicity under California Civil Code § 3344. *See id.* at 16-20. Finally, Morton asserts that Section 230 of the CDA is inapplicable because of Twitter's use of its "artificially-intelligent cropping algorithm." *See id.* at 21-24.

    A. <u>TIC, Magic Pony Technology, and TweetDeck</u>

Defendants assert that Plaintiff has failed to state a claim against TIC, Magic Pony Technology. and TweetDeck. Defendants point out that the allegations against the three Twitter affiliates are threadbare and conclusory, and the Court agrees. *See* Mot. at 10-13. Plaintiff alleges that TIC is a company registered in Ireland that offers users access to the Twitter platform in the "E.U., the EFTA States, or the United Kingdom."[1] *See* Compl. ¶ 7. Plaintiff accuses TIC of offering its services to the Doe Tweeter, the third party Twitter user that posted unauthorized images of Plaintiff. *See id.* ¶ 11. The Complaint undercuts its own accusations, however, as it concedes that the Doe Tweeter was operating from an IP address located within the United States, whereas TIC's sphere of operations falls outside the United States. *See id.* The Complaint contains no other details implicating TIC, and Plaintiff fails to meaningfully address how TIC is involved in her Opposition. *See* Opp. at 15-16. The Court agrees that Plaintiff has failed to state a claim against TIC.

Similarly, the Court finds that Plaintiff has failed to state a claim against Magic Pony Technology and TweetDeck. Magic Pony Technology is accused of creating the saliency algorithm and the photo cropping technology employed on the Twitter platform. *See* Compl. ¶¶ 9, 31. Plaintiff, however, fails to explain how Magic Pony Technology is liable for direct or indirect copyright infringement or false light simply by creating a technology that is used to crop photographs. The Complaint contains no specific allegations suggesting that Defendant Magic Pony Technology had any role in integrating the general photo cropping technology into the Twitter platform or was in any way involved in applying the cropping technology on the

---

[1] Presumably, the "E.U." refers to the European Union, and "EFTA" refers to the European Free Trade Association.

unauthorized Tweets at issue. It is not enough to simply plead that Magic Pony Technology is a subsidiary of Twitter and created an algorithmic photo cropping technology; Plaintiff must explain how the conduct of Magic Pony Technology itself satisfies the elements of direct or indirect copyright infringement or false light.

Finally, the Complaint also fails to offer any meaningful details regarding TweetDeck. The Complaint explains that TweetDeck is a social media dashboard application that allows up to 200 users to access the same Twitter account. *See* Compl. ¶ 8. It is unclear how TweetDeck is related to the unauthorized posts at issue as Morton does not allege that the unauthorized Tweets were posted using TweetDeck and appears to only offer a legal conclusion that Twitter users could have viewed the unauthorized Tweets on TweetDeck. *See id.* ¶¶ 27, 65. The Complaint is again silent as to how TweetDeck contributed to direct or indirect copyright infringement or any other causes of action. *See* Opp. at 16-17.

In sum, the Court agrees that Plaintiff has failed to state a claim against TIC, Magic Pony Technology, and TweetDeck. The dismissal is without prejudice and Plaintiff can attempt to add more details to her pleadings to properly state a claim against the Twitter affiliates. The Court need not address the parties' arguments concerning personal jurisdiction over TIC at this juncture but would note, as discussed above, that the Court is unclear how TIC is implicated in this action based on the pleadings.

B. False Light

Morton alleges a cause of action for false light against Twitter for using its saliency algorithm to crop and alter Plaintiff's photos to create the false impression that Morton was appearing in pornography. *See* Compl. ¶¶ 85-87. Defendants argue that the false light claim must be dismissed because it fails to state a claim and because it is barred by Section 230 of the CDA. *See* Mot. at 17-19.

"False light is a species of invasion of privacy, based on publicity that places a plaintiff before the public in a false light that would be highly offensive to a reasonable person, and where the defendant knew or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the plaintiff would be placed." *De Havilland v. FX Networks, LLC*, 21 Cal. App. 5th 845, 865 (2018) (citing *Jackson v. Mayweather*, 10 Cal. App. 5th 1240, 1264 (2017)); "A 'false light' cause of action is in substance equivalent to a libel claim, and should meet the same requirements of the libel claim, including proof of malice" for public figures. *Id.*

Therefore, for a model of international renown, like Morton, to properly plead a false light cause of action requires proving that Twitter made statements that are: "(1) assertions of fact, (2) actually false or create a false impression about her, (3) highly offensive to a reasonable person or defamatory, and (4) made with actual malice." *Id.* (citing *Brodeur v. Atlas Ent., Inc.*, 248 Cal. App. 4th 665, 678 (2016)); *see also Solano v. Playgirl, Inc.,* 292 F.3d 1078, 1082 (9th Cir. 2002)

The Court agrees with Defendants that Plaintiff has failed to allege a claim for false light. Plaintiff makes no attempt to argue that Twitter's saliency algorithm is somehow making assertions of fact in deciding how to crop the photos submitted by third-party users. *See* Opp. at 17-19. Plaintiff similarly has not alleged actual malice or explained how she believes that Twitter displayed actual malice when it appears that Twitter employed the same cropping algorithm across all users. *Id.* Moreover, the Court is not entirely clear how Twitter's use of cropping could give the false impression that Morton was appearing in pornography. *See* Compl. ¶¶ 85-87. The Court notes that to the extent that the false impression was caused by the underlying Tweet submitted by a third-party user, like the Doe Tweeter, and not the cropping decisions of Twitter's saliency algorithm, Twitter is likely protected by Section 230 of the CDA, as discussed *infra* in the following section.

The Court therefore agrees that Plaintiff has failed to state a cause of action for false light.

C. Right of Publicity and Section 230 of the CDA

Plaintiff Morton included a cause of action for violating her right of publicity against only the Doe Tweeter. *See* Compl. ¶¶ 81-83. In her Opposition, she indicates for the first time that she intends to state a claim for right of publicity under California Civil Code § 3344 as to all Defendants. *See* Opp. at 19-21. Plaintiff cannot add to her Complaint in an Opposition to a motion to dismiss, but even if she could, the claim for right of publicity against Twitter and its affiliates would be dismissed under Section 230 of the CDA. *See* Reply at 10-12.

The Court has previously addressed Section 230 of the CDA in *Morton I* for similar arguments. *See Morton I,* ECF No. 30 at 3-6. In that order, the Court discussed how Section 230 protects interactive computer services, like Twitter, from "lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions – such as deciding whether to publish, withdraw, postpone, or alter content." *See id.* at 3; *Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398, 407 (6th Cir. 2014). The Court held that Section 230 of

the CDA protected Twitter from claims predicated on the content posted by third parties, where Twitter would be held liable as the "publisher or speaker" of content provided by another. The same reasoning would apply here to the extent Plaintiff seeks to hold Twitter liable for a Tweet sent by the Doe Tweeter, a third-party user that allegedly violated Morton's right of publicity. The Court thus rejects Plaintiff's attempts to improperly extend her right of publicity claim to include Twitter and its affiliates.

## IV.    Conclusion

Based on the foregoing discussion, the Court **GRANTS** Twitter's motion to dismiss. Magic Pony Technology, Inc; TweetDeck, Inc.; and Twitter International Company are dismissed from the action. The false light cause of action is also dismissed, and the right of publicity cause of action is limited to the Doe Tweeter. The dismissals are without prejudice.